## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 00-1827 |
| Plaintiff, | Judge Cercone |
| v. | |
| DAVID W. BUTLER, | |
| Defendant. | |

## DECLARATION OF DONALD J. ENRIGHT, ESQ. IN SUPPORT OF MOTION FOR SANCTIONS AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

I, Donald J. Enright, counsel for David W. Butler in this matter and a partner with Finkelstein, Thompson & Loughran, hereby affirm and attest under penalty of perjury as follows:

1.     I am an adult of sound mental health, and make these representations on personal knowledge.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Affidavit of David W. Butler dated July 13, 2005.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the Affidavit of Thomas J. Gill, dated December 11, 2001.

4.     Attached hereto as Exhibit 3 is a true and correct copy of DX 326, a demonstrative exhibit prepared by Butler's counsel for trial, reflecting the various calls from Butler's various phones to the various Prudential Washington, DC extensions on March 17, 1997.

5.    Attached hereto as Exhibit 4 is a true and correct copy of the Affidavit of Peter Barrett, dated January 4, 2002.

6.    Attached hereto as Exhibit 5 is a true and correct copy of the Affidavit of Burton H. Finkelstein, Esq., dated July 13, 2005.

7.    Attached hereto as Exhibit 6 is a true and correct copy of a letter from Burton H. Finkelstein, Esq. (Counsel for David Butler) to Michael Novakovic of the United States Securities and Exchange Commission dated January 14, 2000, with the Federal Express shipping slip reflecting the tracking number of this package.

8.    Attached hereto as Exhibit 7 is a Bill of Costs enumerating the costs and expenses paid by David W. Butler in connection with defending this litigation.

9.    Attached hereto as Exhibit 8 is a true and correct copy of the current firm resume of Finkelstein, Thompson & Loughran, counsel for David W. Butler.

10.    Attached hereto as Exhibit 9 is a true and correct accounting of the billable time of David Butler's primary counsel and associated staff in defending this litigation.

Sworn and subscribed under penalty of perjury this 14th day of July, 2005.

Donald J. Enright, Esq.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION,　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　Plaintiff,　)
　　　　　　　　　　　　　　　　　　　　　)　　　　Civil Action No. 00-1827
　　　　　　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
DAVID W. BUTLER,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　Defendant.　)
　　　　　　　　　　　　　　　　　　　　　)

STATE OF CALIFORNIA　　　　　)
　　　　　　　　　　　　　　　)　　ss:
COUNTY OF SAN MATEO　　　　)

### AFFIDAVIT OF DAVID W. BUTLER

I, David W. Butler, being duly sworn, do hereby testify as follows:

1.　　I am an adult of majority age, of sound mental health, and I make this affidavit based on personal knowledge. If called to do so, I could and would testify truthfully about the matters set forth herein as follows.

2.　　On February 16, 2000 I was deposed by Michael Novakovic and Elaine Greenberg, officers of the SEC, at SEC Headquarters in Washington, DC.

3.　　Before the deposition began, my counsel asked if the SEC was prepared to question me regarding the substantial number of news articles and analyst reports my counsel had delivered via Federal Express to their offices, attention Mr. Novakovic, approximately one month prior to the deposition. The articles and reports were exculpatory, as they tended to demonstrate that the market was aware, prior to my trades, of the distinct possibility that FORE Systems could fall short of analyst expectations for the March 1997 quarter, due to slow Asian sales, slower sales cycles and a high degree of back end loading.

4.　　The letter accompanying the press articles and analyst reports explicitly requested that I be questioned regarding them at the deposition.

5.　　Prior to the start of the deposition, the officers denied ever having received the delivery of the reports and articles prior to the deposition.

6.       Conor Crowley, my counsel, produced the Federal Express tracking number of the delivery of the information to assist the SEC in tracking the delivery. The officers then appeared to call their office, and reported back that they never received the data. They offered no explanation for the signature receipt of an SEC employee in the possession of Federal Express when asked.

7.       After conferring with my counsel without my presence, the SEC officers refused to question me on the record regarding any of these press articles or analyst reports.

8.       At the end of the deposition I expressed disappointment that the SEC chose not to question me regarding these matters on the record.

9.       After the deposition record was closed, Mr Novakovic stated to me, "When I'm through with this case I'll never be on *your* Christmas card list." (Emphasis in original statement).

10.       My net worth, as calculated for the purposes of the EAJA, was well under $1,900,000 at the time the SEC initiated this action. This calculation uses the acquisition cost of non-cash assets including managed investment accounts, home equity, and possessions.

11.       The assets and possessions considered in item 10 above comprised substantially all of my net worth.

12.       On September 14, 2000 I was not the beneficiary of any trust, or any other asset ownership or asset protection mechanism or instrument.

13.       On September 14, 2000 I had no foreign interest of any kind.

I declare under penalty of perjury of the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct, executed this 13 day of July, 2005.

David W. Butler

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**

State of California

County of *San Mateo*                                    } ss.

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1
2
3
4
5
6

_____        _____
Signature of Document Signer No. 1           Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me on this

*13* day of *July*            *2005* by
   Date         Month              Year

(1) *David W. Butler*
_____
        Name of Signer

☐ Personally known to me
☒ Proved to me on the basis of satisfactory evidence
   to be the person who appeared before me (.) (,)
                                          (and

(2)_____
        Name of Signer

☐ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
   to be the person who appeared before me.)

_____
        Signature of Notary Public

**SUSAN J. AMIRSEHHI**
Commission # 1462980
Notary Public - California
San Mateo County
My Comm. Expires Feb 10, 2008

Place Notary Seal Above

———— **OPTIONAL** ————

*Though the information below is not required by law, it may prove*
*valuable to persons relying on the document and could prevent*
*fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: *Affidavit of David W. Butler*

Document Date: *7-13-05*            Number of Pages: *2*

Signer(s) Other Than Named Above: *none*

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

©2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5910    Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION,    )
                                        )
                          Plaintiff,    )
                                        )        Civil Action No. 00-1827
              v.                        )
                                        )
DAVID W. BUTLER,                        )
                                        )
                         Defendant.     )
                                        )

COMMONWEALTH OF PENNSYLVANIA    )
                                )    ss:
COUNTY OF ALLEGHENY            )

## AFFIDAVIT OF THOMAS J. GILL

I, Thomas J. Gill, being duly sworn, do hereby testify as follows:

1.    I make this affidavit based on personal knowledge. If called to do so, I could and would testify truthfully about the matters set forth herein as follows.

2.    In March, 1997, I was Chief Operating Officer of FORE Systems, Inc. ("FORE").

3.    Up until the last few days of March, 1997, I remained confident that FORE had the opportunity to book enough orders to achieve mininum Wall Street earnings per share estimates.

4.    I was the author of the electronic mail message dated March 18, 1997, attached hereto as Exhibit "1".

5.    Exhibit "1" reflects my belief as of March 18th that FORE had the possibility to book enough orders to achieve revenue of $120 million and/or earnings per share to meet minimum Wall Street estimates for the quarter ended March 31, 1997.

6.    The $4 million in backlog referred to in Exhibit "1" represents backlog that was on hold and could be released. On March 18, 1997, FORE had additional shippable backlog (excluding other deferred revenue) in excess of $6 million.

7.    In Exhibit "1", I explained to FORE's regional sales vice presidents how FORE could achieve revenue of $120 million for the quarter ended March 31, 1997.

I declare under penalty of perjury of the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct, executed this _11th_ day of December, 2001.

_____
Thomas J. Gill

Sworn to and Subscribed before me this _11th_ day of December, 2001.

_____
Notary Public

My Commission Expires: 7-22-04

{Notarial Seal}

Notarial Seal
Alice M. Popowich, Notary Public
Sewickley Boro, Allegheny County
My Commission Expires July 22, 2004

Member, Pennsylvania Association of Notaries

CONFIDENTIAL
TREATMENT REQUESTED
BY FORE SYSTEMS, INC.

Thomas J. Gill, 10:04 18/03/97 -0, Home Stretch

Date: Tue, 18 Mar 1997 10:04:37 -0500 (EST)
X-Sender: tgill@popnost1.fore.com
X-Mailer: Windows Eudora Version 2.1.1
To: rbibb@fore.com, mig@fore.com, kjrk@fore.com, mmaniglia@fore.com,
    mccarthy@cadia.com, syoung@fore.com, dbutler@fore.com
From: 'Thomas J. Gill' <tgill@fore.com>
Subject: Home Stretch
Cc: ecc@fore.com, om@fore.com, rjk@fore.com

This is my best guess at where we are based on yesterday's conference call:

| Territory | Book to Date | To-Go | Up-Side Needed | Total |
|---|---|---|---|---|
| NA Dir | $21.5 | $17 | $3.0 | $41.5 |
| OEM/SI | $ 6.3 | $ 2 | $1.0 | $ 9.3 |
| Telco Incr. | $ 5.2 | $ 2 | $1.0 | $ 8.2 |
| Federal | $ 8.7 | $ 4 | $1.0 | $13.7 |
| | | | | |
| Subtotal NA | $41.7 | $25 | $6.0 | $72.7 |
| | | | | |
| Asia | $ 7.0 | $ 2 | $2.0 | $11.0 |
| EMEA | $12.5 | $10 | $3.0 | $25.5 |
| Latin Amer. | $ .8 | $ 0.2 | $0.5 | $ 1.5 |
| House/Other | $ 2.3 | $ 0.3 | $0.0 | $ 2.6 |
| | | | | |
| Total | $64.3 | $37.5 | $11.5 | $113.3 |

```
Book n Ship @ 3/17        $68       To get to $130mm
                          -10           "       "$120mm
Adjusted Bk n Ship        $58
Pipeline                  -38       From above
Needed Upside             $20
Minus Upside              -12       From above
>From Backlog           (-  4)      Holds, LCs, ATMNet, OEM D1
Create...............$  4           Favor from UUnet/Sprint/????
```

Put differently:

```
Pipeline          $38
Upside           ($12)
Backlog         ($ 4)
Creative
                  ----
Total             $58
```

The $38mm seems to be very solid.  If I break down the U.S. we are
not in bad shape based on the following opportunities:

| | | |
|---|---|---|
| Case Western | $2.7 | Reeling in slowly and 98% likely |
| AHERF | .5 | Looks good |
| Prudential | $1.0 | May require some phone calls to push |
| DAOU | $ .9 | Likely |
| McGuire | $ .8 | Just popped up and I will personally push |
| MCNet | $ .7 | Credit risk, checking out |
| ATMNet | $1.2 | Same, working 3rd party lease |
| Anixter | $1.0 | Demo stuff plus |
| Cabletron | $1.0 | Not certain |
| | | |
| Total | $9.8 | Means $9.2 comes from balance of field/channels |

The international business also appears solid.

Upside suggestions to come from:

| | | |
|---|---|---|
| UUNet | $1.0 | Mike/Jeff |
| Solomon | $1.0 | Tom/Mike |

Δ  EXHIBIT 7
Deponent Wrigley
Date 8/10/06 Rptr
www.DEPOBOOK.com

SEC 020677

CONFIDENTIAL
TREATMENT REQUESTED
BY FORE SYSTEMS, INC.

**Thomas J. Gill, 10:04 18/03/97 -0, Home Stretch**

| | | |
|---|---|---|
| Sprint | $1.0 | Gnat/Jeff |
| ABERF | $1.0 | Mike/Kirk |
| NSA | $1.0 | Eric/Mike/Richard |
| GTE | $1.0 | Tom/Steve |
| Nissho | $1.0 | Tom/Steve |
| CWare/Telem. | $1.0 | Tom/Dave |
| Knet | $1.0 | Tom/Dave |
| EMEA/Other | $1.0 | Tom/Dave |
| Other | $1.0 | Tom/M2 |
| | | |
| Total | $11.0 | |

The above are all friends of the company.  We need to be stressing our
business partnerships NOW!

Keep the faith.

-Tom

SEC 020678

# EXHIBIT 3

# Butler's March 17, 1997 Call Records

(Demonstrative Exhibit)



**Call**

13 — 4:42PM, 2 Minutes, 40 Seconds, Butler Home to Schrichte

12 — 3:31PM, 8 Minutes, 55 Seconds, Office to Schrichte, SEC002025

11 — 3:28PM, 0 Seconds, Prudential to Office, PRU000007

10 — 2:50PM, 9 Minutes, 25 Seconds, Office to Schrichte, SEC002025

9 — 2:20PM, 13 Minutes, 29 Seconds, Office to Carmen, SEC001946

8 — 2:04PM, 42 Minutes. 55 Seconds, Sales Teleconference Call

7 — 1:51PM, 30 Seconds, Office to Carmen, SEC001891

6 — 1:39PM, 2 Minutes, 38 Seconds, Office to Carmen, SEC001891

5 — 1:05PM, 6 Minutes, 5 Seconds, Office to Carmen, SEC001852

4 — 1PM, 9 Minutes, Office to Schrichte Direct, SEC001891

3 — 10:21AM, 18 Seconds, Initiated by Prudential, PRU000006

2 — 10:08AM, 9 Minutes, 53 Seconds, Office to Carmen, SEC 002025

1 — 9:47AM, 10 Minutes, 28 Seconds, Office to Carmen, SEC001851

**Time of Day**

12:00 AM   2:24 AM   4:48 AM   7:12 AM   9:36 AM   12:00 PM   2:24 PM   4:48 PM

## Log of Butler's Call Records and Phone Calls to Prudential - March 17, 1997
### Demonstrative Exhibit

| Date | Initiator | Recipient | Time (GMT) | Time (EST) | Duration | Time (EST) | End (GMT) | Pg. Ref. |
|---|---|---|---|---|---|---|---|---|
| 17-Mar | Office | Carmen Gonzales | 2:47 PM | 9:47 AM | 0:10:28 | 9:47 AM | 14:57:28 | SEC001851 |
| 17-Mar | Office | Carmen Gonzales | 3:08 PM | 10:08 AM | 0:09:53 | 10:08 AM | 15:17:53 | 2025 |
| 17-Mar | Pru | Office X - 39 | 3:21 PM | 10:21 AM | 0:00:18 | 10:21 AM | 15:21:18 | Pru 6 |
| 17-Mar | Office | Chris Schricte | 6:02 PM | 1:00 PM | 0:09:00 | 1:00 PM | 18:11:00 | 1891 |
| 17-Mar | Office | Carmen Gonzales | 6:05 PM | 1:05 PM | 0:06:05 | 1:05 PM | 18:11:05 | 1852 |
| 17-Mar | Office | Carmen Gonzales | 6:39 PM | 1:39 PM | 0:02:38 | 1:39 PM | 18:41:38 | 1891 |
| 17-Mar | Office | Carmen Gonzales | 6:51 PM | 1:51 PM | 0:00:30 | 1:51 PM | 18:51:30 | 1831 |
| 17-Mar | Office | Conference Call | 7:04 PM | 2:04 PM | 0:42:55 | 2:04 PM | 19:46:55 | |
| 17-Mar | Office | Carmen Gonzales | 7:20 PM | 2:20 PM | 0:13:49 | 2:20 PM | 19:33:49 | 1946 |
| 17-Mar | Office | Chris Schricte | 7:50 PM | 2:50 PM | 0:09:25 | 2:50 PM | 19:59:25 | 2025 |
| 17-Mar | Pru | Office - Main? | 8:28 PM | 3:28 PM | 0:00:00 | 3:28 PM | 20:28:00 | Pru 7 |
| 17-Mar | Office | Chris Schricte | 8:31 PM | 3:31 PM | 0:08:55 | 3:31 PM | 20:39:55 | 2025 |
| 17-Mar | Home | Chris Schricte | 9:42 PM | 4:42 PM | 0:02:40 | 4:42 PM | 21:44:40 | |

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

)
SECURITIES AND EXCHANGE COMMISSION, )
)
               Plaintiff,        )
)
           v.            )      Civil Action No. 00-1827
)
DAVID W. BUTLER,        )
)
          Defendant.      )
)

## AFFIDAVIT OF PETER BARRETT

I, PETER BARRETT, aver as follows:

1. I make this affidavit based on personal knowledge. If called to do so, I could and would testify truthfully about the matters set forth herein.

2. From August 1993 through April 1998, I was employed as a broker by Prudential Securities, Inc. ("Prudential"), in Washington, DC.

3. David W. Butler was a client of mine in 1996 and 1997.

4. During March 1997, I serviced clients jointly with Christopher Schrichte and Christopher Robinson, registered brokers at Prudential.

5. During March 1997, my administrative assistant was Carmen Gonzales.

6. As early as January 31, 1996, Mr. Butler informed me in writing that he was concerned that his portfolio, which consisted almost entirely of FORE common stock, was too concentrated and that he wished to diversify his holdings, or hedge his position, to protect his net worth. (See January 31, 1996, facsimile attached hereto as Exhibit A.)

7. In a January 31, 1996, facsimile Mr. Butler indicated that he preferred to continue to hold

his FORE common shares and asked for my advice regarding the purchase of put options on FORE common stock to protect against an unforeseen drop in FORE's common stock price, and the sale of covered call options to generate supplemental income and reduce his margin balance. See Exhibit A.

8.   The purchase of put options on FORE common stock was the most efficient way for Mr. Butler to preserve his net worth while continuing to hold FORE common stock.

9.   To protect his net worth, Mr. Butler bought put options on FORE common stock in 1996, hedging his long position in FORE common stock.

10. This transaction protected Mr. Butler against an unexpected drop in FORE's common stock and allowed him to maintain his long position in FORE common stock.

11. At least one week prior to March 17, 1997, I again discussed with Mr. Butler the need to diversify or hedge, given that almost all of his net worth remained in the form of FORE common stock, the price of which had been steadily dropping for months.  This discussion focused on the purchase of put options in an amount that would hedge his long position in FORE common stock.

12. On March 17, 1997, I spoke directly with Mr. Butler and confirmed that he wished to place an order to purchase 600 July put options on FORE common stock as a long-term hedge against continuing drops in the price of FORE common stock.  I agreed with Mr. Butler that this was a prudent hedging strategy given that almost all of his net worth was in the form of FORE common stock.

13. This transaction protected Mr. Butler against an unexpected drop in the price of FORE common stock but allowed him to maintain his long position in FORE common stock.

14. Mr. Butler never indicated to me that he believed FORE would fail to meet consensus

revenue and earnings estimates.

15. I specifically recall March 17, 1997, because it was St. Patrick's Day, and my practice on that day was to leave the office at lunch time and not return that day.

16. During 1996 and 1997, pursuant to his stated goal of January 31, 1996, Mr. Butler wrote covered call options on the common stock of FORE and other corporations on numerous occasions as part of an ongoing strategy to generate supplemental income.

17. In August 2001, I was subpoenaed by the Securities and Exchange Commission ("SEC") to provide deposition testimony in this matter.

18. The evening before my deposition, I was contacted at home by Catherine Pappas, an attorney with the SEC, who wished to discuss my testimony.

19. After a two hour conversation regarding my recollection of the pertinent events of March 1997, Ms. Pappas informed me that my deposition would be cancelled and that my testimony would not be needed.

20. I have not spoken to Mr. Butler in several years and we do not maintain a relationship.

I declare under penalty of perjury of the laws of the District of Columbia that the foregoing is true and correct, executed this 4th day of January 2002.

District of Columbia
City of Washington

Sworn to before me this 4 day of January 2002.

_Sandra P. Irwin_
Notary Public
SANDRA P. IRWIN
Notary Public, District of Columbia
My Commission Expires May 14, 2004

_Peter Barrett_
Peter Barrett

*CONFIDENTIAL FAX*                                     *January 31, 1996*

TO:        Peter Barrett and/or Chris Schrichte
           Prudential Securities, (202) 872-6581

FROM:      Dave Butler (FORE)

SUBJ:      Investment Goals

Hi Peter and Chris:

First, Carmen is awesome - if she ever leaves, I'd have a new office set up for her and
ready within an hour. She is really great.

I finally have moved the majority of my assets into my command account, so I wanted to
briefly tell you what I plan and ask your advice.

I have just under 32,000 shares of FORE, with another 14,500 to be exercised and put into
the account this calendar year. These shares are eligible for reduced long-term capital gains
tax at 14% from the Omnibus tax reconciliation act of 1993 - so I don't want to sell any
FORE shares until I have held them for 5 years, or until I lose faith in FORE (which is not
likely).

I will need lots of cash; I cannot get a mortgage in France from a French bank since my
direct deposit must stay in the US (again for tax reasons). I also need to buy cars, lamps,
etc. I will hold off on a home purchase for as long as possible to try to mass assets in the
command account first.

Given the above, my investment goals are:

1) Diversify my portfolio to help protect against an unforeseen crash in FORE - potentially
causing a margin call (we'll go as easy as we can on the margin borrowing for cash). This
diversification must also be funded through margin. This diversification should be
somewhat safer than FORE, and I would like to minimally have the investment cover the
margin interest associated with it. I have no idea what to do here or what makes sense.
Perhaps I should be buying cheap puts as a matter of course to protect against a FORE
crash at minimal expense?

2) Generate supplemental income (whittle down margin balance) via the sale of covered
calls (on FORE) and puts. Its OK if covered call options get exercised, but not desirable.
If the sale of puts is deemed conservative, great. Where reasonable however, I would like
to limit exposure from the sale of puts via the purchase of far less expensive puts. I'll get
more aggressive as I gain experience. Bottom line - I want to ease into doing this in a
relatively conservative, but not whimpy way. If the action appears conservative, let's do
larger transactions. Also, I don't object to the same stuff on other securities which I own
through diversification.

I need your handholding for awhile guys. Please tell me what makes sense and lets do it.

Thanks.

Dave

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 00-1827 |
| Plaintiff, | Judge Cercone |
| v. | |
| DAVID W. BUTLER, | |
| Defendant. | |

District of Columbia )
                 ) ss.:
City of Washington )

## AFFIDAVIT OF BURTON H. FINKELSTEIN

I, **Burton H. Finkelstein**, being duly sworn, do hereby testify as follows:

1.     I make this affidavit based on personal knowledge. If called to do so, I could and would testify truthfully about the matters set forth herein.

2.     On or about February 9, 1998 our firm was retained to represent David W. Butler ("Butler") individually in connection with an inquiry by the Securities and Exchange Commission ("SEC") into his trading in securities of FORE Systems, Inc., ("FORE") during the period of 1996 and 1997.

3.     Shortly after February 9, 1998 I received a telephone call from Michael Novakovic, who identified himself as a staff attorney in the SEC's Philadelphia office in charge

of the investigation into trading in FORE's securities. He stated that he had heard from FORE's counsel that I would be representing Butler. I replied that our Firm had just been retained by Butler.

4.    Novakovic then stated "I am surprised that you are not in here to settle the case against Butler for trading on inside information."

5.    I was shocked at this statement from an SEC staffer who had responsibility for conducting an investigation and gathering the facts, when the fact gathering had just commenced.

6.    I told Novakovic that I had spent 5 years as an SEC enforcement attorney and never in my 5 years at the SEC or as a defense lawyer for then 28 years, had I heard such a comment from an SEC staff attorney and was "dismayed that he (Novakovic) had reached a conclusion of Butler's guilt before conducting an impartial investigation and gathering all the facts, including getting my client's version of the facts."

7.    I then called FORE's counsel, an attorney who had spent at least 10 years at the SEC, and recounted my conversation with Novakovic. He said he never had something like this happen to him in all his years of practice. He agreed with me that Novakovic's statement was inappropriate.

I declare under penalty of perjury of the laws of the District of Columbia that the foregoing is true and correct, executed this _13th_ day of July, 2005.


Burton H. Finkelstein


Sworn to and Subscribed before me
this _13th_ day of July, 2005.


Notary Public

SANDRA P. IRWIN
Notary Public, District of Columbia
My Commission Expires June 30, 2009

My Commission Expires

{Notary Seal}

3

# EXHIBIT 6

## FINKELSTEIN, THOMPSON & LOUGHRAN

ESTABLISHED 1977

THE FOUNDRY BUILDING
SUITE 601
1055 THOMAS JEFFERSON STREET, N. W.
WASHINGTON, D. C. 20007

TELEPHONE: (202) 337-8000
FACSIMILE: (202) 337-8090

January 14, 2000

***VIA FEDERAL EXPRESS***

Mr. Michael B. Novakovic
Staff Attorney
Philadelphia District Office
United States Securities and Exchange Commission
601 Walnut Street
Suite 1120 E.
Philadelphia, PA 19106-3322

  Re: In the Matter of FORE Systems, Inc.

Dear Mike,

  We have obtained articles directly from Reuters and Dow Jones, and an analyst report directly from Hambrecht & Quist, LLC, which support our position that negative information regarding FORE Systems, Inc. was available prior to March 17, 1997. Also, this information was widely disseminated through postings on the World Wide Web prior to the date of Mr. Butler's trades, which supports our position that any information (material or otherwise) that was available to Mr. Butler was also available to the public.

  We believe that these articles clearly show that Mr. Butler's purported "insider information" was actually widely disseminated and thus could not have been non-public. We will be prepared to discuss these articles at Mr. Butler's deposition and expect that you will question Mr. Butler about them.

  Finally, we have not yet had a response to our request that Mr. Butler's testimony be taken in Washington, D.C.

       Sincerely,

       Burton H. Finkelstein

Enclosure

**FedEx** *USA Airbill*   Tracking Number  2346 0150 4297

Form 0245

**Sender's Copy**

**From** *Please print and press hard.*

Date  1/14/00

Sender's FedEx Account Number  0200-4936-7

Sender's Name  **BURTON H. FINKELSTEIN**   Phone ( 202 ) 337-8000

Company  **FINKELSTEIN THOMPSON LOUGHRAN**

Address  **1055 THOMAS JEFFERSON W # 601**

City  **WASHINGTON**   State  **DC**   ZIP  **20007**

Your Internal Billing Reference  **1867**   *OPTIONAL*
*First 24 characters will appear on invoice.*

**To**

Recipient's Name  **MICHAEL B. NOVAKOVIC**   Phone (   )

**Staff Attorney**

Company  **Philadelphia District Office**

Address  **Securities and Exchange Commission**
*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

**601 Walnut Street - Suite 1120 E.**
*To "HOLD" at FedEx location, print FedEx address here.*

City  **Philadelphia**   State  **PA**   ZIP  **19106**

~~NEW Peel and Stick FedEx USA Airbill~~
See back for application instructions.

**Questions? Call 1·800·Go·FedEx®** (800-463-3339)
**Visit our Web site at www.fedex.com**
By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**4a   Express Package Service**   *Packages up to 150 lbs.*
*Delivery commitment may be later in some areas.*

[X] FedEx Priority Overnight   [ ] FedEx Standard Overnight   [ ] FedEx First Overnight
*Next business morning*   *Next business afternoon*   *Earliest next business morning delivery to select locations*

[ ] FedEx 2Day*   [ ] FedEx Express Saver*   * FedEx Letter Rate not available
*Second business day*   *Third business day*   Minimum charge: One-pound rate

**4b   Express Freight Service**   *Packages over 150 lbs.*
*Delivery commitment may be later in some areas.*

[ ] FedEx 1Day Freight*   [ ] FedEx 2Day Freight   [ ] FedEx 3Day Freight
*Next business day*   *Second business day*   *Third business day*
* Call for Confirmation.

**5   Packaging**   *Declared value limit $500*

[X] FedEx Letter*   [ ] FedEx Pak*   [ ] Other Pkg.
Includes FedEx Box, FedEx Tube, and customer pkg.

**6   Special Handling**

[ ] Saturday Delivery   [ ] Sunday Delivery   [ ] HOLD Weekday   [ ] HOLD Saturday
Available for FedEx Priority   Available for FedEx Priority   at FedEx Location   at FedEx Location
Overnight and FedEx 2Day   Overnight to select ZIP codes   Not available with   Available for FedEx Priority
to select ZIP codes       FedEx First Overnight   Overnight and FedEx 2Day
                to select locations

Does this shipment contain dangerous goods?
One box must be checked.

[X] No   [ ] Yes   [ ] Yes   [ ] Dry Ice
        As per attached   Shipper's Declaration   Dry Ice, 9, UN 1845 _____ kg
        Shipper's Declaration   not required
Dangerous Goods cannot be shipped in FedEx packaging.   [ ] Cargo Aircraft Only

**7   Payment** *Bill to:*
Enter FedEx Acct. No. or Credit Card No. below.

[X] Sender   [ ] Recipient   [ ] Third Party   [ ] Credit Card   [ ] Cash/Check
Acct. No. in Section 1 will be billed.

FedEx Acct. No.
Credit Card No.
Exp. Date

Total Packages   Total Weight   Total Declared Value†
$          .00

†Our liability is limited to $100 unless you declare a higher value. See back for details.   FedEx Use Only

**8   Release Signature**   *Sign to authorize delivery without obtaining signature.*

By signing you authorize us to deliver this shipment without obtaining a signature and agree to indemnify and hold us harmless from any resulting claims.

**359**

0109501053

SRS 999•Rev. Date 11/98•Part #154813S•©1994-98 FedEx•PRINTED IN U.S.A.

# EXHIBIT 7

| | CUMULATIVE EXPENSES |
|---|---|
| AIRFARE | 13875.22 |
| COMPUTER RESEARCH | 22882.06 |
| COPYING | 42044.92 |
| DELIVERY SERVICES | 5523.42 |
| DOCUMENT FEE | 22874.35 |
| EXPERT SERVICES | 63232.35 |
| FACSIMILE | 355 |
| HOTEL | 10113.81 |
| MEALS | 1375.19 |
| MISCELLANEOUS | 17628.62 |
| OUTSIDE REPRODUCTION COSTS | 2446.3 |
| POSTAGE | 46.6 |
| PROCESS SERVICE | 4063.35 |
| TELEPHONE | 193.31 |
| TRANSCRIPT | 7744.57 |
| TRANSPORTATION | 2425.32 |
| **TOTALS** | **216824.39** |

| DATE | CATEGORY | EXPENSE DESCRIPTION | AMOUNT |
|---|---|---|---|
| 12/31/2000 | AIRFARE | Airfare | 177.78 |
| 12/31/2000 | COMPUTER RESEARCH | Computer research | 856.48 |
| 12/31/2000 | COPYING | Photocopying | 827.44 |
| 12/31/2000 | DELIVERY SERVICE | Delivery Services | 149.2 |
| 12/31/2000 | DOCUMENT FEE | Document Fee | 11168.53 |
| 12/31/2000 | MISCELLANEOUS | Filing Fee | 120 |
| 12/31/2000 | POSTAGE | Postage | 3.75 |
| 12/31/2000 | TELEPHONE | Telephone | 28.35 |
| 8/29/2001 | TRANSCRIPT | Brentano Reporters, LTD - Computer generated transcript | 598.5 |
| 8/29/2001 | TRANSCRIPT | Copley Cort Reporting, Inc - Transcript of Jeffery P. McCarthy | 785.25 |
| 9/4/2001 | TRANSCRIPT | Powers, Garrison & Hughes - Transcript and video tape | 572.8 |
| | | Tankoos Reporting Company, Inc - Video tape deposition of Stewart | |
| 9/26/2001 | TRANSCRIPT | Winner | 75.1 |
| 9/26/2001 | TRANSCRIPT | Powers, Garrison & Hughes - Michael Green Transcript | 283.2 |
| 9/26/2001 | TRANSCRIPT | AKF Reporters, Inc - Transcript of Gary Brunner depo | 688.5 |
| 9/26/2001 | TRANSCRIPT | AKF Reporters, Inc - Transcript of Eric Cooper and Kevin Nigh | 704 |
| 9/26/2001 | TRANSCRIPT | Powers, Garrison & Hughes - Thomas Gill Transcript | 969.71 |
| 9/26/2001 | TRANSCRIPT | Esquire Deposition Services - Court reporting on 8/02/01 of Kirk Wrigley | 1909.11 |
| 11/30/2001 | TRANSCRIPT | Vincent Varallo Associates, Craig Mccann Transcript | 1158.4 |
| 1/31/2002 | AIRFARE | Airfare | 9955.84 |
| 1/31/2002 | COMPUTER RESEARCH | Computer research | 4879.11 |
| 1/31/2002 | COPYING | Telecopying | 343 |
| 1/31/2002 | COPYING | Photocopying | 14950.03 |
| 1/31/2002 | DELIVERY SERVICE | Delivery Services | 1462.47 |
| 1/31/2002 | DOCUMENT FEE | Document Fee | 11698.32 |
| 1/31/2002 | HOTEL | Hotel | 6181.27 |
| 1/31/2002 | MEALS | Meals | 823.59 |
| 1/31/2002 | MISCELLANEOUS | Filing Fee | 120 |
| 1/31/2002 | MISCELLANEOUS | Miscellaneous | 11587.9 |
| 1/31/2002 | POSTAGE | Postage | 7.03 |
| 1/31/2002 | PROCESS SERVICE | Service of Process | 3879.5 |
| 1/31/2002 | TELEPHONE | Telephone | 53.24 |
| 1/31/2002 | TRANSPORTATION | Parking | 127 |
| 1/31/2002 | TRANSPORTATION | Auto rental | 195.8 |
| 1/31/2002 | TRANSPORTATION | Taxis | 313 |

| Date | Category | Description | Amount |
|---|---|---|---|
| 1/31/2002 | TRANSPORTATION | Transportation-Mileage/Gas/Toll | 1278 |
| 7/1/2002 | DELIVERY SERVICE | Federal Express - Fed Ex Deliveries #6070 | 72.38 |
| 7/16/2002 | DELIVERY SERVICE | Federal Express delivery charges (July 2002) | 100.11 |
| 7/31/2002 | COMPUTER RESEARCH | WESTLAW Charges (July 2002) | 3175.52 |
| 7/31/2002 | TELEPHONE | Long-distance charges (July 2002) | 2.01 |
| 8/19/2002 | DELIVERY SERVICE | Federal Express Charges (Involve #4-319-21419) | 9.11 |
| 8/19/2002 | DELIVERY SERVICE | Federal Express Charges (Involve #4-319-56687) | 24.24 |
| 8/19/2002 | DELIVERY SERVICE | Federal Express Charges (Involve #4-319-95347) | 115.43 |
| 8/31/2002 | COMPUTER RESEARCH | WESTLAW charges (August 2002) | 2295.31 |
| 8/31/2002 | COPYING | Xerox charges (August 2002) | 357 |
| 8/31/2002 | TELEPHONE | Long Distance calls for August 2002 | 0.56 |
| 9/26/2002 | OUTSIDE REPRODUCTION COSTS | ZAP - Outside reproduction costs (Invoice #11352) | 24.53 |
| 9/26/2002 | OUTSIDE REPRODUCTION COSTS | Copy General - Outside reproduction services (Invoice #1104260) | 54.46 |
| 9/30/2002 | COMPUTER RESEARCH | WESTLAW charges (Sept 2002) | 1341.19 |
| 9/30/2002 | COPYING | Xerox Charges (Sept 2002) | 1879.5 |
| 9/30/2002 | TELEPHONE | Long-distance calls (Sept 2002) | 0.1 |
| 10/24/2002 | DELIVERY SERVICE | Federal Express Charges (Involve #4-415-39634) | 21.78 |
| 10/31/2002 | COMPUTER RESEARCH | WESTLAW charges (Oct 2002) | 1995.56 |
| 10/31/2002 | COPYING | Xerox charges (Oct 2002) | 22.4 |
| 10/31/2002 | FACSIMILE | Fax Charges (Oct 2002) | 4 |
| 10/31/2002 | TELEPHONE | Long-Distance Calls (Oct 2002) | 1 |
| 11/30/2002 | COPYING | Xerox Charges (Nov 2002) | 88.55 |
| 12/31/2002 | COPYING | Xerox Charges (Dec 2002) | 992.95 |
| 12/31/2002 | FACSIMILE | Fax Charges (Dec 2002) | 16 |
| 12/31/2002 | MISCELLANEOUS | Miscellaneous meal expenses | 257 |
| 12/31/2002 | MISCELLANEOUS | Miscellaneous transportation expenses | 260 |
| 12/31/2002 | MISCELLANEOUS | Miscellaneous hotel expenses | 400 |
| 12/31/2002 | MISCELLANEOUS | Miscellaneous airfare expenses | 600 |
| 12/31/2002 | POSTAGE | Postage Charges (Dec 2002) | 0.97 |
| 12/31/2002 | TELEPHONE | Long Distance Charges (Dec 2002) | 8.77 |
| 1/13/2003 | DELIVERY SERVICE | Federal Express - Federal Express delivery services (Invoice # 4-511-64101) | 33.61 |
| 1/13/2003 | DELIVERY SERVICE | Federal Express - Federal Express delivery services (Invoice # 4-511-26562) | 37.6 |
| 1/17/2003 | DELIVERY SERVICE | Federal Express - Federal Express services (Invoice # 4-511-96039) | 33.57 |
| 1/20/2003 | DELIVERY SERVICE | Federal Express - Federal Express services (Invoice # 4-560-32848) | 10.41 |
| 1/21/2003 | AIRFARE | CRC airfare expenses to Pittsburgh, PA | 764.5 |

| Date | Category | Description | Amount |
|---|---|---|---|
| 1/21/2003 | AIRFARE | DGT airfare expenses to Pittsburgh, PA (1/22/03) for Butler settlement conference | 764.5 |
| 1/21/2003 | HOTEL | DJE hotel expenses in Pittsburgh, PA | 169.86 |
| 1/21/2003 | HOTEL | CRC hotel expenses in Pittsburgh, PA | 169.86 |
| 1/21/2003 | MEALS | DJE meal expenses in Pittsburgh, PA | 25.5 |
| 1/21/2003 | MEALS | CRC meal expenses in Pittsburgh, PA | 37.23 |
| 1/28/2003 | AIRFARE | DJE OOPS airfare expenses for Pittsburgh, PA trip | 764.5 |
| 1/28/2003 | MEALS | DJ OOPS meal expenses in Pittsburgh, PA | 9.41 |
| 1/28/2003 | TRANSPORTATION | DJE OOPS taxi expenses in Pittsburgh, PA | 28 |
| 1/31/2003 | COMPUTER RESEARCH | WESTLAW Charges (Jan) | 2177.35 |
| 1/31/2003 | COPYING | Xerox Charges (Jan) | 1229.55 |
| 1/31/2003 | FACSIMILE | Fax Charges (Jan) | 15 |
| 1/31/2003 | POSTAGE | Postage Charges (Jan) | 0.37 |
| 1/31/2003 | TELEPHONE | Long Distance Charges (Jan) | 10.05 |
| 2/3/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-560-72210) | 11.23 |
| 2/3/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-561-10641) | 38.74 |
| 2/5/2003 | HOTEL | DGT hotel expenses in Pittsburgh, PA | 169.86 |
| 2/5/2003 | TRANSPORTATION | Cash - Cabfare (DJE, DGT, CRC) | 80 |
| 2/20/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-561-47071) | 21.73 |
| 2/28/2003 | COMPUTER RESEARCH | WESTLAW charges (February 2003) | 3143.63 |
| 2/28/2003 | POSTAGE | Postage charges | 0.6 |
| 3/3/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-608-27027) | 21.85 |
| 3/27/2003 | COPYING | Copy General - Outside reproduction services (Invoice #1112047) | 134 |
| 3/31/2003 | COMPUTER RESEARCH | WESTLAW charges (March 2003) | 96.5 |
| 4/28/2003 | MISCELLANEOUS | Pacer Service Center - PACER online services | 0.98 |
| 4/30/2003 | TELEPHONE | Long distance call charges (April 2003) | 1.52 |
| 9/30/2003 | COPYING | Photocopying | 9.8 |
| 9/30/2003 | TELEPHONE | Long distance call charges (MCI bill - 9/24/03 invoice) | 0.27 |
| 10/23/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-897-07898) | 52.78 |
| 10/31/2003 | TELEPHONE | Long distance call charges (MCI charges - 10/24/2003) | 0.3 |
| 11/6/2003 | AIRFARE | Airfare to Pittsburgh | 894.5 |
| 11/6/2003 | HOTEL | Hotel charges in Pittsburgh (11/7/2003) | 203.31 |
| 11/20/2003 | MISCELLANEOUS | CRC travel advance expenses | 70 |
| 11/30/2003 | COMPUTER RESEARCH | Computer research (Nov 2003) | 2538.06 |
| 11/30/2003 | COPYING | Photocopying (Nov 2003) | 687.75 |
| 11/30/2003 | TELEPHONE | Telephone (MCI long distance - 11/24/2003) | 15.12 |
| 12/11/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #1-639-18475) | 11.24 |

| Date | Category | Description | Amount |
|---|---|---|---|
| 12/11/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-945-86351) | 18.12 |
| 12/11/2003 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #4-945-86351) | 92.52 |
| 12/31/2003 | TELEPHONE | Long distance call charges (MCI - 12/23/03) | 2.06 |
| 2/29/2004 | TELEPHONE | Telephone - Feb. 2004 | 0.46 |
| 3/31/2004 | COPYING | Photocopying (March 2004) | 611.1 |
| 3/31/2004 | TELEPHONE | Long distance call charges (MCI - March 2004) | 0.16 |
| 4/30/2004 | TRANSPORTATION | Taxi - Petty cash - DJE OOPS expense in Pittsburgh (11/03) | 20 |
| 5/31/2004 | COPYING | Photocopying - downstairs copier (May 2004) | 1.4 |
| 6/30/2004 | COPYING | Photocopying - upstairs copier (June 2004) | 4.55 |
| 6/30/2004 | COPYING | Photocopying (in-house reproduction costs - June 2004) | 6.65 |
| 7/31/2004 | COPYING | Photocopying (July 2004) | 1995 |
| 7/31/2004 | TELEPHONE | Long Distance Calls (MCI - July 2004) | 2.26 |
| 8/20/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Client #1867 - Documents & Postage | 26.65 |
| 8/20/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Client #1867 - Documents & Postage | 26.65 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment | 500 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment | 500 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment | 500 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment (per DJE) - 8/23/04 | 500 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment (per DJE) - 8/23/04 | 500 |
| 8/23/2004 | MISCELLANEOUS | Miscellaneous - Witness Fee & Mileage payment (per DJE) - 8/23/04 | 500 |
| 8/31/2004 | COPYING | Photocopying (August 2004) | 2981.3 |
| 8/31/2004 | FACSIMILE | Fax charges | 6 |
| 8/31/2004 | POSTAGE | Postage - August 2004 | 6.22 |
| 9/7/2004 | AIRFARE | Airfare to/from Butler Trial (9/04) | 197.7 |
| 9/7/2004 | MISCELLANEOUS | Miscellaneous office supplies, binders, exhibit labels, etc. needed for Butler trial in Pittsburgh, PA | 178.49 |
| 9/8/2004 | MISCELLANEOUS | Witness Fee | 500 |
| 9/9/2004 | EXPERT SERVICES | Expert services rendered by Tomapple Associates, Inc. (6/01 thru 9/3/04) | 63232.35 |
| 9/14/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #1-973-62825) | 92.58 |
| 9/18/2004 | AIRFARE | Airfare to/from Pittsburgh, PA for Butler trial (9/18/04) | 71.7 |
| 9/18/2004 | MEALS | Lunch for LRB during Butler trial in Pittsburgh, PA (9/04) | 5.12 |
| 9/18/2004 | TRANSPORTATION | Mileage to/from airport in personal car | 26.25 |
| 9/19/2004 | MEALS | Meals in Pittsburgh, PA during Butler trial (9/19/04) | 34.01 |

| Date | Category | Description | Amount |
|---|---|---|---|
| 9/19/2004 | MEALS | Meals during Butler trial in Pittsburgh, PA (9/19/04) | 435.15 |
| 9/20/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-620-70186) | 28.57 |
| 9/20/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-620-70186) | 98.33 |
| 9/23/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-620-16740) | 24.14 |
| 9/23/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-621-28743) | 169.47 |
| 9/23/2004 | MISCELLANEOUS | Petty cash-office supplies (binder & packing tape) purchased from Staples for Butler trial | 43.34 |
| 9/23/2004 | MISCELLANEOUS | Petty cash -miscellaneous trip expenses in Philly during Butler trial (LRB) - 9/16/2004 | 100 |
| 9/23/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Multi-part copying job (9/22/2004) | 152.5 |
| 9/24/2004 | DELIVERY SERVICE | DJE Hotel expenses in Pittsburgh, PA (9/18 - 9/24/04) | 988.49 |
| 9/24/2004 | HOTEL | RGG hotel charges during Butler trial in Pittsburgh, PA (9/24/04) | 637.26 |
| 9/24/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services during Butler trial in Pittsburgh, PA (9/04) | 148.46 |
| 9/26/2004 | AIRFARE | Airfare to/from Pittsburgh, PA for Butler trial (9/26/04) | 73 |
| 9/26/2004 | AIRFARE | Airfare for Butler trial in Pittsburgh, PA (9/26/04) | 100.6 |
| 9/26/2004 | HOTEL | LRB hotel & meal expenses in Pittsburgh, Pa (9/18 - 9/26/04) | 1332.17 |
| 9/26/2004 | MISCELLANEOUS | Miscellaneous trial expenses while in Pittsburgh, PA for Butler trial (9/04) | 112.86 |
| 9/27/2004 | HOTEL | Hotel expenses in Pittsburgh, PA during Butler trial (9/27/04) - DGT MBNA card | 1250.22 |
| 9/27/2004 | MISCELLANEOUS | Miscellaneous - Office supplies ordered specifically for Butler trial prep - Oval Office Supply Invoice #184701-0 | 308.05 |
| 9/27/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Invoice #14586 | 28.46 |
| 9/27/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Invoice #14601 | 175.89 |
| 9/27/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services (9/16/04) - Copy General Invoice #14641 | 238.15 |
| 9/27/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Butler Trial Prep (9/17/04) | 467.31 |
| 9/27/2004 | OUTSIDE REPRODUCTION COSTS | Reproduction Services - Invoice #14601 | 1103.24 |
| 9/27/2004 | PROCESS SERVICE | Service of Process on Seth Rosenberg (9/9/04) - Capitol | 183.85 |
| 9/27/2004 | TRANSPORTATION | DGT Taxi expenses in Pittsburgh, PA during Butler trial (9/27/04) - DGT MBNA card | 40 |
| 9/30/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-621-86583) | 802.5 |
| 10/6/2004 | AIRFARE | RGG OOPS Airfare expenses to/from Butler trial in Pittsburgh, PA (9/21/04) | 110.6 |
| 10/6/2004 | DOCUMENT FEE | Document Fee - RGG OOPS reproduction costs during Butler trial (9/21/04) | 7.5 |
| 10/6/2004 | MEALS | LRB OOPS meal expenses in Philadelphia during Butler trial (9/17 through 9/24/04) | 5.18 |

| Date | Category | Description | Amount |
|---|---|---|---|
| 10/6/2004 | MISCELLANEOUS | Miscellaneous travel expenses for Butler trial (given to LRB from petty cash - 9/16/04) | -100 |
| 10/6/2004 | MISCELLANEOUS | Miscellaneous DGT OOPS trip expenses in Pittsburgh during Butler Trial (9/18 thru 9/27/04) | 70 |
| 10/6/2004 | TRANSPORTATION | RGG OOPS taxi expenses during Butler trial in Pittsburgh, PA (9/21-9/23/04) | 50 |
| 10/6/2004 | TRANSPORTATION | DGT OOPS taxi expenses in Pittsburgh during Butler Trial (9/18/04 through 9/27/04) | 98.27 |
| 10/6/2004 | TRANSPORTATION | Transportation - Mileage - LRB OOPS taxi and tip expenses in Philadelphia during Butler trial (9/17 - 9/24/04) - against advance taken from petty cash | 169 |
| 10/14/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex - Federal Express - Invoice #7-670-43176) | 547.94 |
| 10/15/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex - Federal Express delivery charges (Invoice #7-671-01580) | 389.51 |
| 10/25/2004 | DELIVERY SERVICE | Delivery/Messenger/Fed Ex (Invoice #7-802-43889) | 43.77 |
| 10/26/2004 | COMPUTER RESEARCH | Computer Research - Pacer - Due 11/15/2004 | 2.52 |
| 10/31/2004 | COMPUTER RESEARCH | [October 2004] Computer Research | 380.83 |
| 10/31/2004 | COPYING | Photocopying - downstairs copier (October 2004) | 99.4 |
| 10/31/2004 | COPYING | Photocopying - upstairs copier (October 2004) | 162.75 |
| 10/31/2004 | POSTAGE | [October 2004] Postage | 2.35 |
| 10/31/2004 | TELEPHONE | Long Distance Calls (MCI bill - October 2004) | 0.84 |
| Aug-04 | COPYING | Photocopying | 4987.5 |
| Aug-04 | FACSIMILE | Fax Charges | 6 |
| Aug-04 | POSTAGE | Postage | 6.22 |
| Aug-04 | TELEPHONE | Long Distance Calls | 2.26 |
| Sep-04 | COPYING | Photocopying | 9673.3 |
| Sep-04 | FACSIMILE | Fax Charges | 308 |
| Sep-04 | POSTAGE | Postage | 19.09 |
| Sep-04 | TELEPHONE | Long Distance Calls | 63.98 |
| | | **GRAND TOTAL** | **216824.39** |

| | CUMULATIVE EXPENSES |
|---|---|
| AIRFARE | 13875.22 |
| COMPUTER RESEARCH | 22882.06 |
| COPYING | 42044.92 |
| DELIVERY SERVICES | 5523.42 |
| DOCUMENT FEE | 22874.35 |
| EXPERT SERVICES | 63232.35 |
| FACSIMILE | 355 |
| HOTEL | 10113.81 |
| MEALS | 1375.19 |
| MISCELLANEOUS | 17628.62 |
| OUTSIDE REPRODUCTION COSTS | 2446.3 |
| POSTAGE | 46.6 |
| PROCESS SERVICE | 4063.35 |
| TELEPHONE | 193.31 |
| TRANSCRIPT | 7744.57 |
| TRANSPORTATION | 2425.32 |
| **TOTALS** | **216824.39** |

# EXHIBIT 8



Finkelstein
Thompson
Loughran

# FIRM RESUME
# 2005

**FINKELSTEIN, THOMPSON & LOUGHRAN**

Duvall Foundry · 1050 30th Street, NW · Washington, DC 20007

601 Montgomery Street · Suite 665 · San Francisco, CA 94111

# FINKELSTEIN, THOMPSON & LOUGHRAN

FINKELSTEIN, THOMPSON & LOUGHRAN ("FT&L") is a sixteen-lawyer litigation firm, with offices in Washington, D.C. and San Francisco, CA, focusing primarily on complex financial litigation involving antitrust violations, fraud and crime in the banking, securities and commodities industries, and consumer fraud.

By concentrating exclusively on litigation rather than a generalized transactional practice, the firm avoids the conflicts of interest, both actual and philosophical, that can arise from multi-faceted representation, and is able to offer the kind of hard-hitting approach that modern financial litigation demands. Since 1993, FT&L has served in a leadership position in cases that have recovered many hundreds of millions of dollars for investors and consumers.

The firm's professional staff includes not only experienced and expert lawyers but also a certified financial analyst with a financial market background. The firm draws on this in-house expertise to provide the cost-efficient and timely analysis of complex transactions needed in fast moving litigation. In addition, because the outcome of litigation is often dependent on the strength of expert testimony, the firm has developed strong working relationships with nationally prominent outside consultants in the areas of securities, commodities, antitrust, banking, consumer fraud, marketing and economics.

## HISTORY

The firm was founded in 1977 by Burton H. Finkelstein and Douglas G. Thompson, Jr. Thomas J. Loughran (deceased) joined the firm in 1984, directly from his position as Director of the Division of Enforcement at the Commodity Futures Trading Commission. The firm's offices are located in Georgetown in the historic Duvall Foundry and in San Francisco in the Financial District.

## EXPERIENCE

Our named partners have over sixty five years combined experience in the prosecution and defense of complex financial civil and criminal matters. Senior partner Burton H. Finkelstein is the former head of the Administrative and Criminal Trial Unit of the Securities and Exchange Commission. Douglas G. Thompson, Jr. is an alumnus of the securities litigation group of a major Washington, D.C. law firm. Thomas J. Loughran was a former Securities and Exchange Commission Special Counsel and former Director of the Division of Enforcement of the Commodity Futures Trading Commission. The other partners and associates have extensive experience in a variety of complex litigation fields. The firm has fourteen lawyers and a Chartered Financial Analyst. The firm has practiced before the Securities and Exchange Commission, Commodity Futures Trading Commission, Federal Trade Commission, Federal Communications Commission, U.S. Copyright Office, New York Stock Exchange, Chicago Board of Trade, National Association of Securities Dealers, National Futures Association, and in various state and federal trial and appellate courts across the country, in civil and criminal enforcement matters and in private damage litigation. The firm has considerable expertise and experience in defending and prosecuting complex financial class action claims.

FT&L is involved in class action litigation in federal and state courts nationwide. We have developed a reputation for successful and thorough representation of class clients against many of the largest and most powerful companies in the country. As part of our efforts to serve our clients' interests in the most effective and efficient manner possible, FT&L has established ongoing relationships with other class action law firms whose size, location or expertise complement our own. We have won judgments and negotiated settlements that have recovered an aggregate of over one half of a billion dollars for class members.

FT&L manages prominent roles in many of the largest nationwide class actions, including:

- In re Microsoft Windows Operating System Antitrust Litigation, MDL Docket No. 1332, the ongoing antitrust litigation against Microsoft Corporation, in which FT&L serves on the Executive Committee and co-chairs the Discovery and Settlement Committees.

- In re "Light" Cigarette Litigation, more than a dozen suits in states across the country against major tobacco manufacturers alleging consumer fraud relating to the manufacture and sale of so-called "light" cigarettes, in which FT&L plays a pivotal role in pursuing the claims of millions of class members.

- In re Merrill Lynch & Co., Inc. Research Reports Litigation, MDL Docket No. 1484, the consolidated securities fraud litigation involving allegedly false and misleading analyst reports issued by Merrill Lynch and their former internet analyst, Henry Blodget, in which FT&L serves on the Executive Committee and as Lead Counsel in six of the underlying actions.

- In re Bridgestone/Firestone, Inc., MDL Docket No. 1373, a nationwide action involving Ford Explorers equipped with allegedly defective Firestone tires, in which FT&L serves as Class Counsel on the Discovery Committee.

- Berwecky, et al. v. Bear, Stearns & Co., Inc., 97 Civ. 6257 (S.D.N.Y.), a certified class action involving Bear, Stearns' alleged participation in fraudulent acts committed by the A.R. Baron brokerage firm, in which FT&L serves as Co-Lead Counsel.

## SECURITIES & COMMODITIES CLASS ACTION LITIGATION

Since its inception in 1977, FT&L's securities litigation practice has extended across a wide range of shareholders' securities litigation, from accounting fraud, allegations of insider trading, proxy statement fights, and minority shareholder rights being violated to cases alleging misstatements in prospectuses. FT&L regularly litigates substantive federal issues under the Securities Act of 1933, the Securities Exchange Act of 1934, the Reform Act of 1995, tender offers under the Williams Act, derivative suits under State and Federal law, and unfair business practices claims.

Our clients include institutional investors, pension funds, high-net worth individuals, and retail investors. While few of these class action securities suits go to trial, substantial skill and experience is required to investigate, prepare, and litigate the underlying claims to successful resolution. FT&L enjoys a national reputation for high-quality and successful recoveries for our clients.

## SETTLED REPRESENTATIVE SECURITIES CLASS ACTION CASES

1. <u>PaineWebber Securities Litigation</u>, 94 Civ. 8547 (SHS) - Executive Committee member; $200 million settlement achieved.

2. <u>Prudential Securities Litigation</u>, MDL 1005 - Executive Committee member & Co-Chair of Settlement Committee; $150 million settlement achieved.

3. <u>Kidder Peabody Securities Litigation</u>, 94 Civ. 3954 (JFK) - Executive Committee member; $19 million settlement achieved.

4. <u>Holly Glenn v. Polk Audio, Inc.</u>, Civ. No. 24-C-99-004768 - Co-lead Counsel; $4.8 million settlement achieved (an increase of nearly 50% of shareholder buyout value).

## ONGOING REPRESENTATIVE SECURITIES CLASS ACTION CASES

1. <u>In re InterBank Funding Corp. Securities Litigation</u>, 02-CV-1490 (JDB) – FT&L has been appointed sole Lead Counsel on behalf of a class of 3,100 noteholders.

2. <u>E. Paul Roberts v. Dean Witter Reynolds, Inc. et al.</u>, 8:02-CV-2115-T-26EAJ - FT&L has been appointed Lead Counsel in an action alleging that Defendants manipulated the market price of e-Net stock by engaging in unauthorized trading in the accounts of certain Dean Witter customers in order to stabilize the price of e-Net, creating and promoting a plan to withhold stock from short sellers to effect a "short squeeze" and by making false statements to discourage clients from selling e-Net.

3. <u>Freeland v. Iridium World Communications, Ltd.</u>, 99-cv-1002 (D.D.C.), a consolidated securities fraud class action against Motorola, Inc. and other corporate entities in connection with the development and deployment of the Iridium satellite telephone network, in which FT&L serves as Liaison Counsel and a member of the Lead Plaintiffs' Executive Committee.

4. <u>In re Allied Irish Banks PLC Securities Litigation</u>, 02 Civ. 1738 (S.D.N.Y), a consolidated securities fraud class action against Allied Irish Banks, PLC and its subsidiary Allfirst Bank, in connection with Allfirst employee John Rusnak's fraudulently concealed currency speculation losses of $691 million, in which

FT&L serves as sole lead counsel.

5.    <u>In re En Pointe Technologies, Inc. Securities Litigation</u>, 01-CV-0205 (S.D. Cal.), a consolidated securities fraud class action in which FT&L serves as co-lead counsel, involving allegations of a boiler-room style manipulation of the company's securities and massive insider sales.

6.    <u>In re Xicor, Inc. Shareholder Litigation</u>, 04-CV-017801 (Superior Ct. of Santa Clara, Cal.), a consolidated shareholder class action in which FT&L serves as co-class counsel, involving allegations that the company's board of directors breach their fiduciary duties in agreeing to an acquisition by Intersil Corp. for inadequate consideration, and recommending that shareholders vote to approve such acquisition.

7.    <u>Freeport Partners, LLC v. Allbritton, et al.</u>, 04 CV 02030 (D.D.C.), a putative RICO class action on behalf of shareholders of Riggs National Corporation against certain officers and directors of the company, in connection with money laundering and wire fraud allegations that forced the defendants to agree to sell the company to PNC Bank for grossly inadequate consideration.

# ANTITRUST CLASS ACTION LITIGATION

Federal and state antitrust laws are primarily concerned with protecting the economy and promoting competition between businesses by preventing (i) collusion among "competitors" that might result in restraints on competition in a given industry or market, and (ii) anticompetitive conduct by a particular entity who holds monopoly power in a given industry or market.

FT&L is involved in several cases on behalf of individuals and businesses that have been injured by the anti-competitive behavior of other companies. These cases involve allegations such as market manipulation, monopolization, price-fixing, and predatory practices. Below is a sample of the cases in which we are intensively involved:

SETTLED REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.    <u>In re Relafen Antitrust Litigation</u>, 01-CV-12239 (WGY) - Executive Committee member in federal direct purchaser case, settlement achieved - $175 million.

2.    <u>Heliotrope General, Inc. v. Sumitomo Corporation, et al.</u>, Master Case No. 701679 - Executive Committee member; settlement achieved - $43.5 million.

3.    <u>National Metals, Inc. v. Sumitomo Corp.</u>, Case No. 734001 - Co-lead Counsel, settlements achieved with several defendants for $39.85 million.

4.    <u>In re Sodium Warfarin Antitrust Litigation</u>, MDL Docket No. 1232 (SLR) - Discovery Committee member and Co-lead Counsel in state case; settlement

achieved in the companion national case - $44.5 million.

ONGOING REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.  <u>In re Microsoft Windows Operating System Antitrust Litigation</u>, MDL Docket
    No. 1332 - Discovery & Settlement Committee member, suit alleges that
    Microsoft monopolizes the Windows operating system desktop which results in
    less competition and higher prices to consumers.

2.  <u>Stein v. Pacific Bell et al.</u>, No. C-00-2915 SI - Lead Counsel, suit alleges that
    Pacific Bell monopolizes the DSL market in California which results in less
    competition and higher prices to consumers.

## CONSUMER CLASS ACTION LITIGATION

In federal and state courts throughout the country, FT&L represents consumers who have
been injured or defrauded. Our cases involve individuals or classes of individuals who have been
physically or economically damaged by the wrongdoing of others. Some of our cases seek to
obtain financial relief, medical monitoring, injunctions and revised notification for classes of
plaintiffs. Some of the cases we have brought include:

SETTLED REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.  <u>Gael M. Carter, et al. v. Associates Financial Services Co., Inc., et al.</u>, No.
    96-04652-I. FT&L plays a pivotal role in pursuing the claims of millions of class
    members in a number of suits in states across the country against The Associates
    n/k/a Citifinancial alleging consumer fraud relating to home equity and personal
    loan terms. Tentative settlements achieved in the state, federal and companion
    FTC cases totaling $240 million.

2.  <u>In re The Coca-Cola Company Apple Juice Consumer Litigation</u>, Master Case No.
    E-47054 (Fulton County Superior Court) The firm served as Counsel in this
    consumer class action based upon the sale of adulterated juice products. $5.25
    million settlement achieved.

3.  <u>In re Nestle Juice Products Litigation</u>, Master File No. 976510 (Cal. Super. Ct.
    San Francisco County). $3.5 million settlement achieved.

4.  <u>Miniblind Cases, Coordinated Proceeding Special Title</u> (Rule 1550(b)), Judicial
    Counsel Coordination Proceeding No. 3257 (Cal. Super. Ct. San Francisco
    County). The firm served as Counsel in this consumer class action based upon the
    sale of miniblinds containing unsafe levels of lead.

5.  <u>Tepper v. Tropicana Products, Inc., et al.</u>, Case No. CA-96-846 (Circuit Court of
    the Twelfth Judicial Circuit of the State of Florida, Manatee County, General

Civil Division).  The firm served as Counsel in this consumer class action based upon the sale of adulterated juice products.  $1.15 million settlement achieved.

ONGOING REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.    In re Baycol Products Litigation, MDL Docket No. 1431 - Discovery Committee Member in this consolidated multidistrict litigation alleging that this commonly prescribed cholesterol lowering drug caused rhabdomyolysis, a disease which causes damage to muscle, kidney failure or other injuries.

2.    In re "Light" Cigarette Litigation, Co-lead Counsel, more than a dozen suits in states across the country against major tobacco manufacturers alleging consumer fraud relating to the manufacture and sale of so-called "light" cigarettes, in which FT&L has been successful in obtaining class certifications in various states.

## COMMUNICATIONS AND COPYRIGHT LAW PRACTICE

FT&L lawyers have represented clients in federal courts and before administrative agencies (such as the Copyright Royalty Tribunal, the Copyright Office, and the Federal Communications Commission) and the U.S. Congress.  Clients include foreign and domestic media firms with interests in broadcasting, entertainment, cable television and satellite communications.

## BURTON H. FINKELSTEIN
Partner

BURTON H. FINKELSTEIN has practiced securities litigation for more than forty years, first with the Securities and Exchange Commission and then in private practice. At the SEC he was special trial counsel and an Assistant Director of the Enforcement Division, where he was in charge of the administrative, civil and criminal litigation nationwide enforcement program. In 1970 he joined the New York firm of Phillips, Nizer, Benjamin, Krim & Ballon and was a partner in their Washington, D.C. office until 1977, when he and Mr. Thompson formed the firm now known as Finkelstein, Thompson & Loughran.

In private practice Mr. Finkelstein has participated in more than twenty securities fraud trials in cities throughout the United States, representing broker-dealers, principals and securities salesmen, attorneys, accountants, publicly and privately held companies and officers and directors of such companies. He has also represented companies and individuals in SEC investigations, and has served as special counsel to public companies in conducting internal investigations.

Mr. Finkelstein earned a B.B.A. degree in accounting from City College of New York in 1959 and an L.L.B. degree from the University of Pennsylvania in 1962. After military service and a brief stint as law clerk to the General Counsel of the Federal Power Commission, he began his securities litigation career as trial counsel at the SEC's Washington Regional Office.

Mr. Finkelstein has appeared as a panelist in securities litigation and enforcement seminars for the Practicing Law Institute, New York Law Journal and the American Law Institute - American Bar Association (ALI-ABA). He was an adjunct professor of law at Georgetown University Law School from 1979 to 1998. His course was entitled "Securities and Financial Frauds - Enforcement and Litigation."

## DOUGLAS G. THOMPSON, JR.
### Partner

DOUGLAS G. THOMPSON has specialized in administrative and civil trial and appellate litigation in private practice for over twenty years. His practice has been concentrated in the areas of securities, commodities, banking, communications, and other complex business and financial transactions. Mr. Thompson has represented clients in federal court and before the Securities and Exchange Commission, the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Communications Commission, the Copyright Royalty Tribunal, and the Criminal Division of the Department of Justice. Over the past several years, Mr. Thompson has litigated securities and commodities claims in failed savings and loan cases on behalf of the RTC and FDIC. As lead counsel for the FDIC, Mr. Thompson recently won a jury verdict of more than $1 million after a lengthy trial involving commodities fraud issues.

Mr. Thompson received his A.B. and M.A. degrees in economics from Stanford University and his J.D. degree from Stanford Law School in 1969. He taught at the Stanford Law School in 1969-70 and clerked for Judge Ben. C. Duniway of the United States Court of Appeals, Ninth Circuit, in 1970-71. Following his clerkship, Mr. Thompson joined the law firm of Wilmer, Cutler & Pickering, Washington, D.C., where he was a litigator in communications and securities law. In 1977, he joined with Mr. Finkelstein in the formation of the firm now known as Finkelstein, Thompson & Loughran.

Mr. Thompson is a member of the bar of the District of Columbia and the State of California and of several federal district and appellate courts.

## WILLIAM P. BUTTERFIELD
Partner

Since 1978, WILLIAM BUTTERFIELD has served primarily as a litigator, representing governmental agencies and private clients. As counsel for the FDIC and RTC in numerous lawsuits and investigations, Mr. Butterfield helped those agencies recover losses suffered by financial institutions due to securities, commodities and real estate fraud, director and officer misconduct and accounting malpractice. He also assisted in the RTC's successful defense of a $300 million arbitration dispute regarding the valuation of an acquired financial institutions investment and mortgage portfolio. In addition to his legal work on behalf of federal agencies, Mr. Butterfield has conducted securities fraud investigations on behalf of local political subdivisions in Texas, Ohio and California. Mr. Butterfield has also represented brokerage firms, corporations, directors and officers, attorneys and investors in securities fraud investigations commenced by the Securities and Exchange Commission, and has defended individuals in bankruptcy adversary proceedings, securities and commercial litigation. Mr. Butterfield recently participated extensively as one of the counsel for the plaintiff class in In re Prudential Securities Limited Partnerships Litigation, MDL No. 1005 (S.D.N.Y.), which settled for $137 million. To help plaintiffs counsel manage more than 15 million pages of documents produced in that case, Mr. Butterfield helped design and led the implementation of a computer based document imaging system recognized by Senior U.S. District Judge Milton Pollack as "one of the most innovative and sophisticated high-tech document management/litigation support systems available" 163 F.R.D. 200, 208 (S.D.N.Y. 1995). Mr. Butterfield also participated extensively as one of the counsel for the plaintiff class in In re PaineWebber Securities Litigation, 94 Civ. 8547 (S.D.N.Y.), which settled for $200 million. He is currently involved in securities and consumer credit/life insurance class action litigation.

Before joining Finkelstein, Thompson & Loughran, where he became a partner in 1991, Mr. Butterfield served as an assistant prosecuting attorney for Montgomery County, Ohio from 1979 to 1988. As a member of the Civil Division of the prosecutor's office, Mr. Butterfield served as legal counsel for many local governmental agencies and conducted litigation on diverse matters, including tax abatement, zoning, eminent domain and other real estate issues, labor and government contracting.

Mr. Butterfield earned a B.S. degree from Bowling Green State University in 1975, and a J.D. degree from the University of Toledo in 1978. Mr. Butterfield has also served as an adjunct professor of law at American University, Washington College of Law, where he taught a course in commodities law and regulation. He is admitted to practice before the courts of the State of Ohio and the District of Columbia, as well as the United States District Courts for the Southern District of Ohio, the District of Maryland and the District of Arizona.

## L. KENDALL SATTERFIELD
Partner

KENDALL SATTERFIELD joined Finkelstein, Thompson & Loughran in 1985. Mr. Satterfield practices in the fields of both antitrust and consumer fraud class action litigation. Additionally, he has represented private clients and federal banking agencies in civil and administrative litigation involving securities and commodities fraud, federal banking law and accountant malpractice. Mr. Satterfield also represents Canadian broadcasters and television production companies in matters involving cable television copyright royalties before the United States Copyright Office and has practiced before the Federal Communications Commission.

Mr. Satterfield is a 1981 graduate of Ohio Northern University where he received a Bachelor of Sciences degree with Highest Honors in Business Administration. He then attended Emory University where he received his Juris Doctor in 1984. He is a member of the District of Columbia and Georgia Bars.

## MILA F. BARTOS
Partner

MILA F. BARTOS has been with Finkelstein, Thompson & Loughran since January 1995. Ms. Bartos practices in the fields of both antitrust litigation and consumer fraud class action cases, including adulterated and toxic products. She is a 1990 graduate of the University of Wisconsin - Madison where she received a joint Bachelor of Arts degree in English and Communications. Ms. Bartos then attended the American University Washington College of Law where she received her Juris Doctor in 1993. At American University, Ms. Bartos was a co-founder of the American University Journal of Gender and Law and was a member of the Editorial Board.

Ms. Bartos is the author of the article, "Law Firm Collaboration Via Extranets" published in the Law Library Resource Xchange. She is also an active member of the Chairman's Council of the Appleseed Foundation. Ms. Bartos is a member of the Maryland and District of Columbia Bars.

## DONALD J. ENRIGHT
Partner

DONALD J. ENRIGHT joined Finkelstein, Thompson & Loughran as an associate in 1996, and became a partner in January 2004. He is a 1993 cum laude graduate of Drew University, where he earned a Bachelor of Arts in Political Science and Economics, and a 1996 graduate of the George Washington University National Law Center, where he received his Juris Doctor. He was a Member Editor of The George Washington University Journal of International Law and Economics from 1994 to 1996, and clerked for the House Judiciary Committee in 1994. He is a member of the Bars of Maryland, New Jersey and the District of Columbia, and is admitted to practice before several United States District Courts and Circuit Courts of Appeal.

Mr. Enright practices in the fields of securities, commodities, consumer fraud and other commercial litigation, and on behalf of the firm represents several institutional investors in connection with the firm's shareholder litigation practice. He won a landmark appellate decision addressing the post-PSLRA scienter pleading standard in the Fifth Circuit in *Nathenson v. Zonagen, Inc.*, 267 F.3d 400 (5th Cir. 2001), and recently won a judgment after four days of trial in *United States Securities and Exchange Commission v. Butler*, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005). Mr. Enright works out of the firm's Washington, D.C. offices, and was named as one of Washington's "Top Lawyers" in the December 2004 issue of Washingtonian magazine.

## TRACY D. REZVANI
Partner

TRACY D. REZVANI joined Finkelstein, Thompson & Loughran in September 1996. Ms. Rezvani practices in the fields of securities, antitrust and consumer fraud litigation. She is a 1993 graduate of the University of Maryland-College Park where she received a Bachelor of Science degree in Business & Management. Ms. Rezvani then attended the George Washington University Law School where she received her Juris Doctor in May 1996. At George Washington University, Ms. Rezvani was a member editor of The George Washington Journal of International Law & Economics.

Ms. Rezvani is a member of the District of Columbia and Maryland Bars and is admitted to practice before the United States Supreme Court and the U.S. District Courts for the Districts of Maryland and the District of Columbia. Ms. Rezvani is currently serving as an editor for the Iranian-American Bar Association's *IABA Review*.