IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. 00-1827 |
| DAVID W. BUTLER, | : |
| Defendant. | : |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF AMENDED MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

The Reply Memorandum filed by defendant David Butler in support of his amended application fundamentally misstates the legal standard governing an applicant's burden to demonstrate his eligibility to receive an award of fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412. The United States Securities and Exchange Commission submits this surreply for the limited purpose of correcting that misstatement, 1/ and in order to address the revised arguments set forth in the Reply regarding Butler's net worth as of September 14, 2000. 2/

---

1/   The Commission has considered, and decided against, filing a motion seeking to strike Butler's Reply on the grounds that (1) Butler filed a brief in excess of the page limit prescribed in Judge Cercone's rules of practice, apparently without leave of the Court, (2) the Reply improperly restates arguments that were set forth in Butler's Amended Application, and (3) the Reply is supported by a declaration executed by Butler which inappropriately recycles legal arguments previously raised by his counsel.

2/   Although this surreply only addresses Butler's new arguments regarding his eligibility for an EAJA award and his misstatement of the applicable legal standard, the Commission relies on its earlier brief in support of its position that an award is inappropriate because the Commission's litigation position was "substantially justified."

In sum, notwithstanding three attempts to do so, Butler has not, and apparently cannot, establish his eligibility for an award under EAJA, and his amended application must therefore be denied.

## ARGUMENT

### BUTLER BEARS THE BURDEN OF PROVING HIS ELIGIBILITY UNDER EAJA, AND HAS FAILED, FOR THE THIRD TIME, TO SUSTAIN THAT BURDEN.

Butler asserts in his Reply that "[w]hile the Commission argues that 'Butler . . . bears the burden of demonstrating that he is eligible for an award under EAJA', in actuality it is the government that bears the burden of proving its position was 'substantially justified' in accordance with EAJA." See Reply at 5 (footnote omitted). Butler's statement fundamentally mischaracterizes the law governing the award of fees under EAJA. As the Commission noted in its Opposition, Butler, as an applicant, bears the burden of demonstrating that he is eligible to an award under EAJA. See NAACP v. Donovan, 554 F. Supp. 715, 718 (D.D.C. 1982) ("the burden of proof is always on the applicant to prove entitlement to fees"). Specifically, Butler bears the burden of demonstrating that his net worth at the time this action was filed did not exceed the $2 million figure prescribed in 28 U.S.C. 2412(d)(2)(B). See Estate of Woll by Woll v. United States, 44 F.3d 464, 470 (7th Cir. 1994).

Articulation of the correct legal standard governing this issue is of fundamental importance because Butler's failure to sustain his burden on this issue is jurisdictional, and mandates the denial of his application. See United States v. Harper, 569 F. Supp. 602, 604 (E.D. Pa. 1983); King v. U.S., 1993 U.S. Dist. LEXIS 8999, *3 (S.D. Tex. June 18, 1993). Because EAJA serves as a waiver of the government's sovereign immunity, its provisions must be strictly construed. See DeWalt v. Sullivan, 963 F.2d 27, 29-30 (3rd Cir. 1992). Simply stated, if Butler fails to meet his burden of

demonstrating that he satisfies the eligibility requirements prescribed by EAJA, this Court lacks jurisdiction to consider his application.  See U.S. v. Sherwood, 312 U.S. 548, 586 ((1941) ("the terms of [government's] consent to be sued in any court define that court's jurisdiction to maintain suit.")

Butler has been accorded no less than three opportunities to demonstrate that he satisfies the net worth requirement prescribed by EAJA.  See 28 U.S.C. 2412(d)(2)(B).  His initial application failed to provide any type of documentation supporting his representation that his net worth was less than $2 million on September 14, 2000.   Commission counsel notified Butler's counsel of this deficiency, and entered into a stipulation with Butler's counsel which provided that Butler would file an amended application curing this and other deficiencies manifest in the original application and that the Commission would not challenge the amended application as untimely.  Butler's amended application incorporated an affidavit prepared by his accountant, Steven Olson, in which Mr. Olson stated that Butler's net worth as calculated according to the "cost of acquisition" method prescribed in EAJA as of September 14, 2000 (the date this action was filed) "was no more than $1,952.845.33 and is probably less."

In its Opposition to the amended application, the Commission noted that a bank statement attached to the affidavit submitted by Olson evidenced a transfer of $100,000.00 out of Butler's primary bank account to Butler's counsel on September 15, 2000, the day after this action was initiated, a fact not reflected in Olson's analysis and which raised Butler's net worth on the day this action was filed over the $2 million statutory eligibility threshold.  The Commission also noted that Butler had failed to provide any supporting documentation regarding the value of the Chrysler, Porsche and Acura automobiles listed as assets nor the figure of $30,000 included as an estimate of

his personal possessions.

The linchpin of Butler's argument set forth in his Reply that his net worth was below $2 million is the assertion that Butler had an obligation to pay a $100,000 retainer to the Finkelstein firm <u>which predated the filing of the Commission's action</u>, and that the $100,000 transferred out of Butler's Wells Fargo account on September 15, 2000 cannot be counted as an asset for purposes of the net worth calculation.  <u>See</u> Reply at 3 ("This net balance figure properly reflects Butler's cash position as of September 14, 2000 because Butler owed his counsel $100,000 immediately upon being informed that the SEC was going to file this lawsuit several days earlier.  In fact, while the $100,000 was wired to Butler's counsel on September 15, 2000, the obligation was incurred several days before September 14.")   Unless this Court accepts Butler's argument that the $100,000 should not be included in his assets as of September 14, 2000, it must conclude that Butler's net worth exceeded $2 million on that date, precluding his effort to pursue his EAJA claim.

In fact, Butler's argument is untenable and must be rejected by this Court for several reasons.  That Butler forwarded the $100,000 to the Finkelstein firm the day <u>after</u> the Commission filed its action belies the assertion that Butler's obligation "was incurred several days before September 14."  In fact, until the action was filed, the Commission could at any time have decided not to go forward and Butler would, under any ordinary circumstances, have then owed little or nothing.  Strikingly, Butler, who bears the burden of proof, has not attached the retainer agreement to his brief to enable the Court to review its terms, but has instead relied entirely upon his counsel's legal conclusion in a declaration that the obligation somehow was incurred unconditionally before September 14.   A retainer held by a firm typically does not become the property of the firm, but rather must be held in trust for the client.  Such funds are drawn down in payment of services

subsequently performed on the client's behalf, and a client is entitled to a prompt refund of any unused funds at the termination of the representation. See, e.g., Rule 1.16(d) of Pennsylvania Rules of Professional Conduct. Indeed, a court is likely to determine that an attempt by counsel to enforce an alleged binding obligation to pay for representation in an action that may not be commenced is contrary to public policy.

Finally, allowing an applicant to assert, as Butler does, that he incurred an obligation to pay a retainer to defend against a claim by a governmental agency before such a claim has even been filed would invite unscrupulous litigants and their counsel to circumvent the net worth threshold prescribed in EAJA by doing exactly what Butler has done in this case: argue that a transfer made subsequent to the date an action was filed (which is the date relevant to the net worth calculation) was actually made to satisfy a pre-existing obligation. The statutorily prescribed net worth threshold, and the waiver of sovereign immunity which it effects, cannot and must not be circumvented in such a transparent and cavalier manner, but rather must be strictly construed. DeWalt, 963 F.2d at 29-30.

Butler's Reply relies upon a new affidavit prepared by Olson, who employed a different method for valuation of Butler's assets to arrive at a revised estimate that Butler's net worth on September 14, 2000 was "no more than $1,913,154.98 and . . . probably less" or approximately $40,000 less than the estimate set forth in Olson's earlier analysis. 3/ The fact that Olson has

---

3/   Olson includes the depreciated value for the three automobiles owned by Butler in his revised analysis, resulting in a decrease of $9,620 over his prior estimate, which was based upon the vehicles' acquisition cost. Butler's reliance upon the Seventh Circuit's decision in Continental Web Press, Inc. v. NLRB, 767 F.2d 321 (7th Cir. 1985) and the Fourth Circuit's decision in Broaddus v. U.S. Army Corps of Engineers, 380 F.3d 162 (4th Cir. 2004) to support his use of a depreciated value for Butler's automobiles is unwarranted. The Seventh Circuit in

(continued...)

revised his methods and his conclusions, and purports to rely upon information that was not made available to him during his preparation of his first analysis, undermines the credibility of all of his work. Nevertheless, and notwithstanding Olson's result-oriented revisions, Butler has failed to sustain his burden of demonstrating that his net worth did not exceed $2 million at the time the action was filed, which failure precludes Butler's claim.

Butler asserts that the Commission's request to conduct discovery on his net worth, set forth in the Commission's Opposition, represents an attempt to delay his claim and "muddy the water." To the contrary, it is Butler who has intentionally sought to cloud the issues relating to his net worth by filing a Reply which fundamentally misstates the law governing the burden he bears on this issue, which raises an *ex post facto* and thoroughly implausible argument that this Court should disregard that he transferred $100,000 out of his account the day after this action was filed, and which offers a revised analysis by his personal accountant.

---

3/(...continued)
Continental Web Press affirmed the use of generally accepted accounting principles involving depreciation methods when determining the value of a corporation's assets when evaluating whether a corporation's net worth was below the statutorily prescribed figure for small entities ($5 million when the case was decided). Guidance from the American Institute of Public Accountants indicates that similar depreciation methods are not employed when preparing personal financial statements. See AICPA Statement of Position 82-1. Similarly, the Fourth Circuit's decision in Broaddus approved the use of a fair market value analysis when determining the value of a piece of real property owned by an EAJA applicant. Reliance upon Broaddus would indicate that the value of Butler's home should be listed at its fair market value as of September 14, 2000, rather that its purchase price from several years before. Not surprisingly, Butler does not provide that information.

## CONCLUSION

For the reasons described above and previously, Butler's amended application for attorneys' fees under the EAJA should be denied.

Dated: September 30, 2005                    Respectfully submitted,

UNITED STATES SECURITIES and                 s/ Timothy N. McGarey
EXCHANGE COMMISSION
100 F. Street, N.E.                          TIMOTHY N. McGAREY
Washington, DC                               Special Trial Counsel
    20549-9612

Tel: (202) 551-5140
Fax: (202) 772-9263

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a copy of Plaintiff's Motion seeking permission to file surreply and associated Order and brief, was served via U.S. Mail, postage prepaid, this 30th day of September, upon the following:

Donald J. Enright

FINKELSTEIN, THOMPSON & LOCHRAN

1050 30TH Street, NW

Washington, DC 20007

_____/s/_____

Timothy N. McGarey