IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| vs. | : CIVIL ACTION NO. 00-1827 : : |
| DAVID W. BUTLER, | : : |
| Defendant. | : : : |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OR,
IN THE ALTERNATIVE, FOR PERMISSION TO RESPOND TO,
THE SUPPLEMENTAL DECLARATION**

The Supplemental Declaration of Donald J. Enright, Esq. filed in support of Defendant David Butler's Amended Motion for an Award of Attorneys' Fees and Expenses should be stricken. The Supplemental Declaration was improperly filed without leave of this Court, and also violates the Stipulated Order entered by this Court on July 29, 2005. In addition, Butler's attempt, once again, to revise fundamentally a vital component of his application approximately three months after his deadline to file has passed is unprecedented and impermissible.

In the event that this Court declines to strike the Supplemental Declaration, it should accord it little weight. Notwithstanding that the Supplemental Declaration incorporates a **third** Affidavit prepared by Mr. Butler's personal accountant employing a **third** methodology in an attempt to demonstrate that Mr. Butler's net worth as of September 14, 2000 was less than the $2 million threshold prescribed by EAJA, the Supplemental Declaration does not provide adequate documentation to support Butler's argument. Accordingly, Butler still has not established his

eligibility for an award under EAJA. His amended application must therefore be denied.

## ARGUMENT

1.  <u>THE SUPPLEMENTAL DECLARATION SHOULD BE STRICKEN</u>.

Butler initially filed an application for an award of attorneys' fees and expenses on July 15, 2005 which failed to provide any type of documentation supporting his representation that his net worth was less than $2 million on September 14, 2000. Commission counsel notified Butler's counsel of this deficiency, and Butler and the Commission executed a Joint Stipulation on July 29, 2005. The Joint Stipulation provided that "Butler will file an Amended Petition which corrects these omissions" and other deficiencies manifest in the original application and established a briefing schedule on the Amended Application. <u>See</u> Joint Stipulation, Dckt. No. 173 at ¶ 1. <u>1</u>/ The Commission agreed to this Joint Stipulation in light of case law which generally accords an applicant the opportunity promptly to correct a failure to document the applicant's net worth. The Commission only agreed to the Joint Stipulation because Butler pledged, pursuant to the stipulated language cited above, that his Amended Application would be complete, and would provide all required materials.

In accordance with the Court approved briefing schedule, Butler filed his amended application on August 5, 2005 which incorporated an affidavit prepared by his accountant, Steven Olson. The affidavit stated that Butler's net worth as calculated according to the "cost of acquisition" method prescribed in EAJA as of September 14, 2000 (the date this action was filed) "was no more than $1,952,845.33 and is probably less." In its Opposition to the amended

---

<u>1</u>/     This Court signed the Joint Stipulation on August 8, 2005.

application, the Commission noted that a bank statement attached to the affidavit submitted by Olson evidenced a transfer of $100,000.00 out of Butler's primary bank account to Butler's counsel on September 15, 2000, the day <u>after</u> this action was initiated. This fact was not reflected in Olson's analysis, and raised Butler's net worth on the day this action was filed over the $2 million statutory eligibility threshold. The Commission also noted that Butler had failed to provide any supporting documentation regarding the valuation of Butler's automobiles and personal possessions.

      In Butler's Reply brief, which exceeded the Court's page limit for briefs without authorization to do so, Butler relied upon a second affidavit prepared by Olson, who employed a different method for valuation of Butler's assets. Olson's second affidavit concluded that Butler's net worth on September 14, 2000 was "no more than $1,913,154.98 and . . . probably less," or approximately $40,000 less than the estimate set forth in Olson's first analysis. Butler argued, for the first time, that he had an obligation to pay a $100,000 retainer to the Finkelstein firm <u>which predated the filing of the Commission's action</u>, and that the $100,000 transferred out of his Wells Fargo account on September 15, 2000 therefore cannot be counted as an asset for purposes of the net worth calculation. The Commission requested, and was granted the Court's permission to file a Surreply, in which it noted the specious nature of Butler's argument as well as Butler's failure to provide a copy of a retainer agreement to enable this Court to review its terms. 2/ The Commission also noted (1) that Olson's revision of his prior methods and conclusions was results-oriented, and undermined the credibility of his work, and (2) that Butler had once again failed to sustain his

---

2/    Significantly, Butler has once again failed to provide a copy of a retainer agreement. The only evidence he has attached is a copy of a wire transfer confirmation, which establishes that Butler transferred the $100,000 to his counsel on September 15, 2000, the day <u>after</u> the action was filed. <u>See</u> Exhibit B to the third Olson Affidavit.

burden of demonstrating that his net worth did not exceed $2 million at the time the action was filed. This failure to sustain his burden precludes Butler's claim.

The linchpin of the unauthorized Supplemental Declaration filed on Butler's behalf on October 12, 2005 is a **third** Affidavit prepared by Mr. Olson. This third Affidavit purports to rely upon "additional information and documentation [received] from Mr. Butler" and employs yet another methodology to calculate another revised net worth figure for Mr. Butler. Butler's filing of the Supplemental Declaration is improper, on several grounds. While Judge Cercone's "Practices and Procedures" explicitly permit the filing of reply briefs, they do not permit the filing of additional materials thereafter, which is why the Commission was obliged to seek permission to file its Surreply. Butler's submission of a document which, once again, significantly revises his position on the issue of his net worth without seeking prior approval of this Court is therefore completely improper. Moreover, his action violates the terms of the Joint Stipulation agreed to by the parties and signed by Judge Cercone, in which Butler agreed that his Amended Application would correct the omissions from his original application and entered into a stipulated briefing schedule. Because this Court entered final judgment in this matter in April, Butler had ample time to assemble all necessary documents prior to the filing of his Amended Application on August 5 or his Reply on September 22, 2005. Butler's submission of yet another affidavit from Mr. Olson allegedly based upon additional information and documentation newly supplied by Mr. Butler is inexcusable, and directly contravenes his obligations as prescribed in the Joint Stipulation.

Finally, and most significantly, Butler's actions mock the regime established by Congress to govern fee applications, which requires applicants to prepare and file fee applications within 90 days. While it is true that some courts have allowed applicants a limited opportunity to correct an

error contained in an application, the Commission is not aware of a single case which has allowed an applicant <u>three</u> opportunities to revise a vital element of his application, on an issue on which the applicant bears the burden of proof, long after the statutorily prescribed filing deadline has passed. As the Commission noted in its Opposition and its Surreply, Butler bears the burden of demonstrating that his net worth at the time this action was filed did not exceed the $2 million figure prescribed in 28 U.S.C. 2412(d)(2)(B).  <u>See</u> <u>Estate of Woll by Woll v. United States</u>, 44 F.3d 464, 470 (7th Cir. 1994).  Butler's failure to sustain his burden on this issue is jurisdictional, and mandates the denial of his application.  <u>See</u> <u>United States v. Harper</u>, 569 F. Supp. 602, 604 (E.D. Pa. 1983); <u>King v. U.S.</u>, 1993 U.S. Dist. LEXIS 8999, *3 (S.D. Tex. June 18, 1993).  Because EAJA serves as a waiver of the government's sovereign immunity, its provisions must be strictly construed.  <u>See</u> <u>DeWalt v. Sullivan</u>, 963 F.2d 27, 29-30 (3rd Cir. 1992); <u>See</u> <u>U.S. v. Sherwood</u>, 312 U.S. 548, 586 ((1941) ("the terms of [government's] consent to be sued in any court define that court's jurisdiction to maintain suit.")

Butler is not merely seeking to correct an error or supplement his initial application in the manner allowed under the case law.  His prior two submissions, including Olson's first two affidavits which employed different methodologies, demonstrated that Butler's net worth <u>exceeded</u> $2 million on September 14, 2000, and that Butler is <u>not</u> eligible to seek an award of fees under EAJA.  Butler now relies upon another affidavit prepared by Olson which employs yet another methodology in a third effort to reduce Butler's net worth figure below the $2 million threshold.  It would be unprecedented for this Court to exercise jurisdiction over Butler's EAJA claim in light of Butler's prior failures to demonstrate his eligibility, and after a process that has so clearly deviated from the application process prescribed in the EAJA.

2.      THE SUPPLEMENTAL DECLARATION FAILS TO ESTABLISH BUTLER'S NET WORTH AS OF SEPTEMBER 14, 2000.

Olson asserts that his third attempt to analyze Butler's net worth as of September 14, 2000 is based upon his receipt of "additional information and documentation from Mr. Butler that now allows me to calculate the cost basis of [Butler's] accounts with a satisfactory degree of accuracy." Affidavit at ¶ 3. 3/ The clear implication of this statement is that Olson has now, finally, been provided with all relevant materials by Butler, and that the conclusions set forth in Olson's third analysis are based upon, and supported by, these newly provided materials. In fact, a cursory review of Olson's third Affidavit demonstrates that key portions of his analysis continue to be based upon nothing more tangible than Butler's undocumented and unsworn "recollection," unfounded speculation by Olson, and the results-oriented inferences drawn therefrom by Olson.

The centerpiece of Olson's analysis is his reevaluation of a Prudential account which was originally listed at a value of $167,687.76 in the first two versions of Olson's analysis, and his conclusion that he originally overstated the value of this account in his first two affidavits by approximately $148,000. See third Olson Affidavit at ¶¶ 8-9. More specifically, Olson alleges that Butler contributed a total of $21,436.48 to a 401(k) plan between 1988 and 1992 during his employment at Network Systems, Corp. Olson claims that the plan balance was subsequently distributed to Butler, who rolled that balance over into an IRA account with IBM Mid-Atlantic

---

3/    Olson made a similar representation in his second Affidavit, noting that he "was not originally provided with information and documentation sufficient to calculate" the balance of Butler's primary checking account by Butler when preparing his initial Affidavit, and asserting that he afterwards was provided with "additional information and documentation" by Butler to respond to arguments raised by the Commission. See Second Olson Affidavit at ¶ 4. Olson provides no explanation why Butler did not initially provide him with all relevant information and documentation, or why Olson did not insist upon being provided with all relevant information before he conducted his analysis on Butler's behalf.

EFCU.  Olson further alleges that Butler thereafter successively transferred these funds into IRA accounts at Fidelity and Prudential, resulting in an account balance as of March 7, 2000 of $169,472.74.  Nevertheless, Olson's revised analysis incorporates a value of $21,436.48 for the Prudential account, which Olson alleges is the acquisition cost for the account.   This change yields a decrease of $141,440.21 in Olson's estimate of Butler's net worth as compared to the conclusion set forth in his second Affidavit.

Butler has not cited any controlling caselaw which states  that the initial cost of establishing an IRA or a 401(k) account constitutes the appropriate measure for an account whose value has increased exponentially over time, or that such a methodology must be employed when calculating the value of the Prudential account.  Indeed, in the same way that the Seventh Circuit's decision in Continental Web Press, Inc. v. NLRB, 767 F.2d 321, 322-323 (7th Cir. 1985) (cited in Butler's Reply) stated that it would be "unrealistic" and "ridiculous" to ignore the depreciation of a capital asset over time when calculating the net worth of a small business entity for EAJA purposes, it would be similarly unrealistic to ignore the vast increase in the value of such accounts (which, unlike real property or capital assets, are liquid and accessible to Butler).  See AICPA Statement of Position 82-1.04 (stating that "personal financial statements should present assets at their estimated current values and liabilities at their estimated current amounts at the date of the financial statements.")

Olson's analysis is also undermined by its lack of an adequate evidentiary basis.  Notably, Butler has not provided a sworn affidavit in support of Olson's latest analysis, either to provide a basis for statements attributed to him by Olson or to verify that he has provided complete documentation to Olson.  Butler's omission is vital, for by Olson's own admission his conclusion

that Butler's 401(k) plan at Network Systems represented his first participation in a retirement plan is entirely based upon Butler's recollection, and his failure to provide Olson with any contradictory information.  See third Affidavit at ¶ 8.  ("It is Mr. Butler's recollection that the first retirement plan that he participated in was through his employment with Network Systems, Corp. and I have been provided with no record or document that contradicts his recollection.").  Butler's demonstrated prior failure to provide adequate documentation to Olson (a fact not adequately disclosed by Olson in his prior affidavits) makes it difficult for this Court to have any confidence that Butler has finally done so now.

The lack of an adequate factual basis supporting Olson's latest analysis is evident after a cursory review of the documentation attached to his third Affidavit.  The documents attached as Exhibits RA6.7 and RA6.8 to Olson's affidavit, which he claims document the transfer of custodianship over the Fidelity Trust account to Prudential Securities, do not provide any information to enable this Court to identify either the source or the amount of funds which were used to establish the Prudential account.  Thereafter, there exists a two year gap in documentation between January 1996 and the statement of covering December 16, 1997 through March 17, 1998 (attached as exhibit RA.9 to Olson's third Affidavit.)  There also exists a second two year gap (from March 1998 to March 2000) in the documentation relating to the Fidelity account attached to Olson's third Affidavit.  Compare RA6.9-RA6.10 to RA6.11.  4/  Finally, Olson (and Butler) cannot provide any conclusive evidence that the funds in the Fidelity IRA account were in fact transferred

---

4/ Olson has only attached first page of the eight page Prudential statement attached as RA6.11.

into the Prudential IRA account as Olson speculates in his analysis. 5/

Accordingly, Olson cannot document his claim that the $21,436.48 which Butler allegedly contributed to a 401(k) plan between 1988 and 1992 during his employment at Network Systems was the sole source of the funds reflected in the statement for the Prudential account attached as Exhibit RA6.11. Olson's conclusion concerning the flow of these funds is explicitly based upon Butler's unsworn and self-serving "recollection," the demonstrably incomplete documentation provided by Butler, and the speculative inferences Olson has drawn in an effort to bridge the critical documentary gaps revealed by his own analysis. These flaws, and Olson's continued revisions to his own analysis on the net worth issue over a three month period, strip Olson's most recent analysis of any reliability.

Olson is clearly aware that his utilization of different methodologies in each of his three analyses to arrive at three different conclusions significantly degrades the reliability of his analysis. See third Affidavit at ¶ 12 ("It is important for the Court to note that these successive calculations have not been contradictory.") 6/ In fact, the results-oriented nature of Olson's analysis is further

---

5/  See Id. at ¶ 9 ("Since it would be highly unusual for a brokerage statement to report activity at a date other than the end of a month quarter or year, it seems fairly obvious that the funds transfer occurred on March 7, 2000. Since all other retirement accounts have been previously accounted for the only explanation of the source of these funds is the Fidelity Trust Company account. Based on this chain of events, the cost basis of this account is $21,436.48.") Butler could, for example, provide a copy of his Fidelity account covering March 7, 2000 to show whether or not those funds were in fact rolled over. Either he has failed to do so or Olson has failed to include it with his latest affidavit.

6/  Although it is true that Olson's prior affidavits qualified his conclusion that Butler's net worth was "no more than [the stated figure] and probably less," inclusion of such language does not change that Olson successively employed different (indeed, contradictory) methods in an obvious attempt to lower his estimate of Butler's net worth each time the Commission debunked his previous effort.

demonstrated by his alternative argument that Butler's net worth as of September 14, 2000 was actually $928,062.90, a figure which he now alleges reflects Butler's one half spousal interest in property Butler owned jointly with his wife. See third Affidavit at ¶ 13. Olson's argument misconstrues the nature of community property. Under California law, each spouse has a present, existing and equal interest in the community property in the marital estate. See Cal. Fam. Code §1100(a). For the investment and retirement accounts at issue here, either spouse has the right to manage, control and dispose of the assets, subject only to the fiduciary duty owed to the other spouse. Id., at §1100(e). A spouse's right in real property is broadly similar, though a spouse must consent to disposition. Id., at §1102(a). Accordingly, the opinion letter cited by Olson which states that "each spouse has a right to own and manage only one-half of the community estate" is simply wrong. Opinion Letter at 3 (emphasis provided).

In addition, if Butler intends to make his wife's ownership of assets an issue in this matter, it is incumbent upon Butler to provide a clear and unequivocal statement that he has provided Olson with all information concerning the assets held by Kristin G. Butler as of September 14, 2000 (including, without limitation, any life insurance policies or annuities, and any real property in her name, in the U.S. or abroad). It is similarly incumbent upon Kristin Butler to verify that she has provided complete and accurate information to Olson. Finally, Olson is obligated to verify his receipt of such materials and their inclusion in his analysis. None of these things have been done. As a result, Olson's claim that the figure for Butler's net worth was actually $928,062.90 based upon his interest in "only one-half of the community estate" is completely unsupported.

In light of the contradictions set forth above, as well as the incomplete documentation relied upon by Olson in support of his analysis, this Court should conclude that Butler has not sustained

his burden of demonstrating that his net worth was less than $2 million as of September 14, 2000.

## CONCLUSION

For the reasons described above and previously, the Supplemental Declaration should be stricken. Alternatively, the Supplemental Declaration should be accorded little weight by this Court.

Dated: October 24, 2005                              Respectfully submitted,


UNITED STATES SECURITIES and            /s/  Timothy N. McGarey
EXCHANGE COMMISSION
100 F. Street, N.E.                                    TIMOTHY N. McGAREY
Washington, DC                                         Special Trial Counsel
       20549-9612

Tel:  (202) 551-5140
Fax: (202) 772-9263