IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. 00-1827 |
| DAVID W. BUTLER, | : |
| Defendant. | : |

**PLAINTIFF'S REPLY TO AFFIDAVITS ATTACHED
TO BUTLER'S OPPOSITION**

Plaintiff United States Securities and Exchange Commission ("the Commission") files this reply to affidavits attached to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike filed by Defendant David W. Butler. On October 24, 2005, the Commission filed a motion seeking to strike the latest Supplemental Declaration filed by Donald J. Enright, or in the alternative, for permission to file a response to the Supplemental Declaration. In support of this motion, the Commission filed an omnibus supporting memorandum arguing why the Supplemental Declaration should be stricken, and responding to the Supplemental Declaration. On October 27, 2005, this Court entered a Memorandum Order denying the Commission's motion to strike, but granting the Commission permission to file a response on or before November 7, 2005.

On October 28, 2005, the day after this Court issued its Memorandum Order, Defendant Butler filed an Opposition to the Commission's motion to strike. 1/ Butler's Opposition, which

---

1/   Because Butler's counsel has not registered for Electronic Case Filing, counsel for the Commission did not receive notice of this filing until it was received via Federal Express at the
(continued...)

attached newly executed affidavits by Butler and his wife, attempted to rebut the arguments raised by the Commission in the omnibus supporting memorandum filed in support of its motion to strike and in response to the Supplemental Declaration. The Commission files this short reply for the limited purpose of addressing the points raised in the affidavits attached to Butler's Opposition. 2/

ARGUMENT

Butler's Most Recent Submission Does Not Cure the Deficiencies of His Amended Application.

The most recent affidavit submitted by Butler in support of his amended application argues that the successive analyses prepared by his accountant Steven Olson were not inconsistent and results-oriented as the Commission has alleged. In addition, Butler complains that compiling the documents to demonstrate his net worth as of September 14, 2000 has required him to expend considerable time and effort in light of the passage of time and his own misplacement of many of the relevant documents, and that this inconvenience is somehow the Commission's fault.

Butler's assertion that Olson's analyses have been consistent and objective is demonstrably

---

1/(...continued)
close of business on Monday, October 31.

2/    For the reasons stated in the Commission's motion to strike, and in light of the untimeliness of the most recent affidavits (which were submitted after the Court ruled on the Commission's motion), the Commission believes that these affidavits should also be stricken. The Commission will not reargue its motion to strike, but respectfully wishes to preserve its previously stated argument that the decisional precedent cited by Butler only related to, and authorized, the efforts by an applicant to promptly remedy initial documentation inadequacies associated with EAJA applications. Butler has not cited a single case in which a court has allowed an applicant (particularly one who has already been afforded an opportunity to submit an amended application) to do what he has done in this case, namely continue to submit revised analyses of the applicant's net worth, and advance entirely new theories on the issue of his net worth, after the validity of prior submissions has been discredited by the government. The Commission respectfully reiterates that Butler's actions undermine the application process prescribed by Congress in EAJA, which governs the limited waiver of the Commission's sovereign immunity.

disingenuous. Olson's first affidavit, filed in support of Butler's amended application, concluded that Butler's net worth on September 14, 2000 "was no more than $1,952,845.33 and is probably less." The Commission pointed out in its Opposition to the amended application that Olson's analysis had understated the balance in Butler's primary checking account by $100,000, and that Olson's analysis actually demonstrated that Butler's net worth exceeded $2 million on September 14, 2000. In response, Olson submitted a second affidavit (attached to Butler's Reply) which lowered his estimate of Butler's net worth on September 14, 2000 to "no more than $1,913,154.98 and . . . probably less." Olson's revised analysis asserted that Butler was obligated to pay a $100,000 retainer to his counsel before the case was even filed, and that the $100,000 transferred out of Butler's Wells Fargo account on September 15, 2000 should therefore be treated as a liability rather than an asset.

  The Commission was granted permission to file a Surreply, in which it noted the specious nature of Butler's argument as well as Butler's failure to provide a copy of a retainer agreement supporting his claim that he was obligated to pay $100,000 before the filing of the Commission's case. Butler, in his latest affidavit, responds that the agreement regarding his alleged obligation to pay his counsel a retainer of $100,000 before the filing of the Commission action "was never reduced to writing." See Butler Affidavit at ¶ 2. The agreement described by Butler runs afoul of Rule 1.16(d) of the Pennsylvania Rules of Professional Conduct (providing that a retainer held by a firm typically does not become the property of the firm, but rather must be held in trust for the client, with the client entitled to a prompt refund of any unused funds at the termination of the representation).

  Olson's revised analysis continued to demonstrate that Butler's net worth exceeded $2

million, mandating the denial of his application. Butler responded on October 12, 2005 by filing another Supplemental Declaration incorporating a third Affidavit prepared by Mr. Olson. In his third Affidavit, Olson purported to rely upon "additional information and documentation [received] from Mr. Butler," employed yet another methodology to calculate another revised net worth figure for Mr. Butler, and opined that "David W. Butler's net worth as of September 14, 2005 is no more than $1,856,125.81 and may be as low as $928,602.91." Olson's dramatic revision to his previous conclusions regarding Butler's net worth is premised upon a downward adjustment of approximately $148,000 to a Prudential IRA account for which he lacks any documentation 3/ (see third Olson Affidavit at ¶¶ 8-9) as well as upon his newly-advanced alternative conclusion that Butler's net worth should be adjusted downward to reflect only a one-half spousal interest in property Butler owned jointly with his wife. See third Affidavit at ¶ 13.

Butler's attempt to blame his involvement in the Commission's investigation for his failure to compile adequate supporting documentation in a timely manner (and, incredibly, for his own misplacement of documents he previously compiled during the Commission's investigation) is similarly unpersuasive: 4/

> It should be noted that I also struggled in finding W-2s from the mid 1990s. It turned out that many documents were missing as I had collected them for subpoena submission to the

---

3/   Butler has argued that the case law does not require EAJA applicants to make a precise showing of their net worth. Cases approving a relatively informal showing to establish an applicant's net worth that was significantly below the statutory threshold are distinguishable from this case, where the documentation initially submitted by Butler actually demonstrated that he exceeded the $2 million statutory threshold. Butler cannot reasonably request that his efforts to contradict his own earlier submissions should be held to a low evidentiary standard.

4/   See Butler Affidavit at ¶ 17 ("The SEC's allegation that I had ample time to recover 20 years of records, that I did not know that I would require, is astounding to me") (emphasis provided).

SEC, and subsequently failed to re-file them nearly a decade ago. I believe that the fact and existence of this very case greatly hampered my ability to locate documents.

<u>See</u> Butler Affidavit at ¶ 16. This Court should also recognize that Butler implicitly attempts to shift the evidentiary burden to the Commission by arguing that some of the documentation relating to his IRA accounts was produced to the Commission during the investigative phase, a point evidenced by Butler's failure to request access to the documents he alleges are available to the Commission but not to him. <u>5/</u> Butler, rather than the Commission, bears the burden of demonstrating his eligibility for an award under EAJA. He has failed to sustain that burden.

Butler's affidavit does nothing to close the evidentiary gaps evident in Olson's analysis of Butler's Prudential IRA account set forth in the Commission's omnibus memorandum. Indeed, Butler admits that he cannot provide a documentary basis which demonstrates the flow of funds from the Fidelity IRA account into the Prudential account as Olson speculates in his analysis. His attempt to blame this failure on the Commission is unavailing since, as noted above, Butler rather than the Commission bears this burden. Because Butler and Olson cannot establish by means other than speculation that the money from his original retirement account at Network Systems ultimately flowed into the Prudential account, the current value of this account (approximately $169,000) must be employed in calculating Butler's net worth and not, as Butler alleges, the amount he used to establish the account. <u>6/</u>

---

5/    Counsel for the Commission has reviewed the documents that were previously produced relating to Butler's IRAs, and has not found any documentation which closes the evidentiary gaps previously noted by the Commission.

6/    As noted in the omnibus memorandum, Butler has not cited any controlling caselaw which states that the initial cost of establishing an IRA or a 401(k) account constitutes the appropriate measure for an account whose value has increased exponentially over time, or that

(continued...)

Finally, the declaration submitted by Butler's wife concedes that she and Butler did not sign a transmutation agreement legally separating their assets until 2002, almost two years after the commencement of this action. In the absence of such an agreement, Butler had an undivided and equal interest in the entire amount of community property held in the marital estate as of September 14, 2000. That no such agreement existed prior to September 14, 2000, and that Butler and his wife subsequently realized that a written agreement was necessary under California law to effectuate their alleged intent, undermine Butler's attempt to halve his net worth, an argument which he failed to raise either in his original or his amended application.

## CONCLUSION

For the reasons described above and previously, Butler has not satisfied his burden of demonstrating that he is eligible to an award of fees under EAJA. Accordingly, his amended application for fees should be denied.

Dated: November 9, 2005                     Respectfully submitted,

UNITED STATES SECURITIES and                /s/ Timothy N. McGarey
EXCHANGE COMMISSION
100 F Street, N.E.                          TIMOTHY N. McGAREY
Washington, DC                              Special Trial Counsel
    20549-9612
Tel: (202) 551-5140
Fax: (202) 772-9263

---

6/(...continued)
such a methodology must be employed when calculating the value of the Prudential account. Indeed, it is unrealistic to ignore the vast increase in the value of such accounts (which, unlike real property or capital assets, are liquid and accessible to Butler). See AICPA Statement of Position 82-1.04 (stating that "personal financial statements should present assets at their estimated current values and liabilities at their estimated current amounts at the date of the financial statements.")